THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH NISONOFF and MAX J. WEINSTEIN, Appellants.

Argued October 18, 1944; decided December 30, 1944.

*Harry G. Anderson* and *Joseph H. Stein* for Joseph Nisonoff, appellant. I. It was reversible error for the trial court to receive in evidence the report of the assistant medical examiner. (*People* v. *Jackson,* 191 N. Y. 293; *Matter of Senior* v. *Boyle,*

221 N. Y. 414; *People* v. *English,* 175 Misc. 751; *Matter of English* v. *Bohan,* 175 Misc. 930; *Matter of Ziegler,* 122 Misc. 351; *Application of Hughes,* 41 N. Y. S. 2d 843; *Hale* v. *City of New York,* 251 App. Div. 826; *People ex rel. Lemon* v. *Supreme Court,* 245 N. Y. 24; *People* v. *Buchalter,* 289 N. Y. 244; *Peoria* v. *Industrial Board,* 284 Ill. 822; *People* v. *Jackson,* 191 N. Y. 293; *Ætna Life Ins. Co.* v. *Milward,* 118 Ky. 716; *Barron* v. *The People,* 1 N. Y. 386; *B. L. T. & S. D. Co.* v. *K. T. & M. M. A. Assn.,* 126 N. Y. 450; *Davis* v. *Supreme Lodge, Knights of Honor,* 165 N. Y. 159; *Beglin* v. *Metropolitan Life Ins. Co.,* 173 N. Y. 374; *Commonwealth* v. *Slavski,* 245 Mass. 405; *Wheeler* v. *State,* 35 Ohio St. 394; *People* v. *Pekarz,* 185 N. Y. 470.) II. The receipt in evidence of the medical examiner's report and the testimony as to the cause of death based thereon was violative of the right of confrontation contained in section 6 of article I of the State Constitution. It was also in violation of the due process of law provision contained in the Fourteenth Amendment to the Constitution of the United States. (*Barron* v. *The People,* 1 N. Y. 386; *People* v. *Bromwich,* 200 N. Y. 385; *People* v. *Elliott,* 172 N. Y. 146; *People* v. *Stilwell,* 244 N. Y. 196; *People* v. *Sugarman,* 248 N. Y. 255; *Salinger* v. *United States,* 272 U. S. 542; *Berkeley Peerage Case,* 4 Campbell 401; *Mattox* v. *United States,* 156 U. S. 237; *Sturla* v. *Freccia,* 5 App. Cas. 623; *Matter of Stenstrom* v. *Harnett,* 131 Misc. 75; *Jewett* v. *Boston Elevated Railway,* 219 Mass 528.)

*Louis Susman* and *Hyman Roffe* for Max J. Weinstein, appellant. I. The trial court erred in receiving in evidence the findings of the assistant medical examiner. Defendant was denied his right of being confronted with, and to cross examine, a witness against him, in violation of section 6 of article I of the State Constitution and in violation of the Fourteenth Amendment of the Federal Constitution. (*Barron* v. *The People,* 1 N. Y. 386; *Mattox* v. *United States,* 156 U. S. 237; *Kirby* v. *United States,* 174 U. S. 47; *Dowdell* v. *United States,* 221 U. S. 325; *People* v. *Hines,* 284 N. Y. 93; *People* v. *Stillwell,* 244 N. Y. 196; *People* v. *Bromwich,* 200 N. Y. 385; *People* v. *Sugarman,* 248 N. Y. 255; *Matter of Hughes,* 41 N. Y. S. 2d 843; *People* v. *Lorenzana,* 12 Philippine 64; *Jewett* v. *Boston Elev. Railway Co.,* 219 Mass. 528; *People* v. *Saccoia,* 268 Mich.

132; *Ogilvie* v. *Ætna Life Ins. Co.,* 189 Cal. 406; *People* v. *Malinowski,* 245 N. Y. 220; *People* v. *Flaherty,* 218 App. Div. 204; *Matter of English* v. *Bohan,* 175 Misc. 930; *People* v. *English,* 175 Misc. 751; *Matter of Ziegler,* 122 Misc. 351; *People* v. *Corbisiero,* 290 N. Y. 191; *People* v. *Nitzberg,* 289 N. Y. 523.) II. The trial court committed reversible error in admitting the report of the assistant medical examiner. (*People* v. *English,* 175 Misc. 751; *Matter of English* v. *Bohan,* 175 Misc. 930; *Matter of Ziegler,* 122 Misc. 351; *Ogilvie* v. *Ætna Life Insurance Co.,* 189 Cal. 406; *Ætna Life Insurance Co.* v. *Milward,* 118 Ky. 716; *Spiegel H. F. Co.* v. *Industrial Commission,* 288 Ill. 422; *The Insurance Co.* v. *Levine,* 24 Col. 43; *United States* v. *Johnson,* 72 F. 2d 614; *Ocean Accident & Guarantee Corporation* v. *Schachner,* 70 F. 2d 28; *Cohen* v. *New York Life Ins. Co.,* 21 F. 2d 278; *Wheeler* v. *State,* 35 Ohio St. 394; *People* v. *Keough,* 276 N. Y. 141.)

*Samuel J. Foley, District Attorney* (*George Tilzer, Herman J. Fliederblum, Francis X. O'Brien* and *Harry E. O'Donnell* of counsel), for respondent. No error was committed by the trial court in receiving in evidence the stenographic record of the autopsy performed by the deceased assistant medical examiner. No constitutional rights of the defendants were violated thereby. (*People* v. *Reese,* 258 N. Y. 89; *Heike* v. *United States,* 192 F. 83, 227 U. S. 131; *State* v. *McO'Blenis,* 24 Mo. 402; *Todd* v. *State,* 69 So. 325; *Chesapeake & Delaware Canal Co.* v. *United States,* 240 F. 903; *People* v. *Fisher,* 223 N. Y. 459; *Matter of Buffalo F. A. Corp.* v. *Mountaindale F. Dist.,* 138 Misc. 285; *Coleman* v. *Commonwealth,* 25 Grattan 865; *Sandy White* v. *United States,* 164 U. S. 100; *Matter of Senior* v. *Boyle,* 221 N. Y. 414; *Mattox* v. *United States,* 156 U. S. 237.)

CONWAY, J. The defendants were convicted of the crime of manslaughter in the first degree. The indictment charged that they, acting in concert with another, had willfully and wrongfully used and employed a certain instrument upon a woman pregnant with child, in order to procure a miscarriage, without any necessity to preserve her life and by the use of such instrument inflicted mortal wounds which resulted in her death.

There is but one question presented for our consideration, and that is whether it was error to admit in evidence the autopsy findings of the Assistant Medical Examiner who had died prior to the trial of appellants. That has become important because of a constitutional amendment which became effective on January 1, 1939. Prior to that amendment there would have been no question as to the admissibility of the findings, for the right of the accused to be confronted with the witnesses against him was a matter of statute (Code Crim. Pro., § 8; Civil Rights Law, § 12), and both the common law and other statutes permitted their introduction in evidence (Civ. Prac. Act, §§ 367, 374a). By the constitutional amendment of 1938, the right of confrontation was written into article I, section 6. The question is whether that made the autopsy findings inadmissible, in view of the death of the reporting official.

The autopsy was performed on November 18, 1942, by the Assistant Medical Examiner. While he was performing the autopsy, he dictated his findings to a stenographer and typist attached to the office of the Medical Examiner. They were subsequently transcribed and a report prepared which was signed by the Assistant Medical Examiner and filed in the office of the Medical Examiner. So much of the report as contained the findings was offered and received in evidence. The opinion contained in the report was not offered. The Chief Medical Examiner was called to give opinion testimony as to the cause of death, based upon those findings.

New York City Charter, sections 874, 875, provide that an Assistant Medical Examiner must be a " doctor of medicine and a skilled pathologist and microscopist." It has not been argued here that the Assistant Medical Examiner did not possess those statutory qualifications.

Section 879 of the Charter provides: " It shall.be the duty of the chief medical examiner to keep full and complete records in such form as may be provided by law. The chief medical examiner shall promptly deliver to the appropriate district attorney copies of all records relating to every death as to which there is, in the judgment of the medical examiner in charge, any indication of criminality, and such records shall not be open to public inspection."

Section 878–3.0 of the Administrative Code of the City of New York provides: "If the cause of such death shall be established beyond a reasonable doubt, the medical examiner in charge shall so report to his office. If, however, in the opinion of such medical examiner, an autopsy is necessary, the same shall be performed by a medical examiner. A detailed description of the findings *written during the progress of such autopsy* and the conclusions drawn therefrom shall thereupon be filed in his office."

Section 879–1.0 of the Administrative Code provides: "Records shall be kept in the office of the chief medical examiner, properly indexed, stating the name, if known, of every person dying under the circumstances described in section eight hundred seventy-eight of the charter, the place where the body was found and the date of death. To the record of each case shall be attached the original report of the medical examiner and *the detailed findings of the autopsy,* if any. The appropriate district attorney and the police commissioner of the city may require from the chief medical examiner such further records, and such daily information, as they may deem necessary."

Civil Practice Act, section 367, now provides, and so provided prior to the adoption of our Constitution of 1938, as follows: "*Certificate of officer as evidence of facts.* Where a public officer is required or authorized, by special provision of law, to make a certificate or an affidavit touching an act performed by him, or to a fact ascertained by him, in the course of his official duty; and to file or deposit it in a public office of the state; the certificate or affidavit so filed or deposited, or an exemplified copy thereof, is presumptive evidence of the facts therein alleged, except where the effect thereof is declared or regulated by special provision of law."

The right of confrontation imports and confers the right of cross-examination. When that right was added to our State Constitution, there was eliminated the possibility of its deprivation by legislative act. When we interpret that addition to the Constitution, we must do so in the light of the law as it existed at the time of the change. Any exceptions to the right of confrontation or cross-examination existing prior to the adoption of the State constitutional provision and not contrary to its spirit, must be respected. (*Mattox* v. *United States,* 156

U. S. 237, 243.) In that case, speaking of the Constitution of the United States, the court used the following language (p. 243), which is particularly applicable here: "We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted, not as reaching out for new guaranties of the rights of the citizen, but as securing to every individual such as he already possessed as a British subject — such as his ancestors had inherited and defended since the days of Magna Charta. Many of its provisions in the nature of a Bill of Rights are subject to exceptions, recognized long before the adoption of the Constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected. A technical adherence to the letter of a constitutional provision may occasionally be carried farther than is necessary to the just protection of the accused, and farther than the safety of the public will warrant."

The right of an accused in a criminal action to be confronted by the witnesses who testify against him, is not violated by the introduction of so-called public documents or official records required to be kept. (*Heike* v. *United States,* 192 F. 83, 94, 95, affd. 227 U. S. 131; *Commonwealth* v. *Slavski,* 245 Mass. 405, 414, 415, 417; *People* v. *Reese* [1932], 258 N. Y. 89, 96; *People* v. *Corey,* 157 N. Y. 332; 5 Wigmore on Evidence, § 1398, pp. 136, 141, 142; Richardson on Evidence [6th ed.], §§ 615, 616, 646, 647.)

The case of *Heike* v. *United States* (*supra*) is important since the right of confrontation is guaranteed by the Sixth Amendment to the Constitution of the United States. While that amendment is not a restraint upon the powers of the States (*People* v. *Bromwich,* 200 N. Y. 385–389), the United States Supreme Court decision is helpful in solving our problem here.

In *People* v. *Reese* (*supra,* CARDOZO, Ch. J.), we pointed out that our statutory rule of confrontation had never been deemed to require "the exclusion of certificates of records made by a public officer in the course of his official duty."

Referring to the requirement of confrontation, Professor Wigmore points out at section 1398, page 141 (*supra*):

"It follows equally that the constitutional provision does not exclude evidence admissible by way of exception to the Hearsay rule.

" The use of dying declarations has been often thus passed upon, and without any dissenting rulings."

" A like consequence must of course follow for the other exceptions to the Hearsay rule; it has been expressly sanctioned for official statements * * *."

In *People* v. *Corey* (157 N. Y. 332) an ante-mortem statement of the deceased was read in evidence on behalf of the People. Defense counsel objected to that evidence as " incompetent, improper and hearsay," and urged on appeal that " dying declarations, although competent at common law, are no longer competent, because the Code of Criminal Procedure, in prescribing the rights of the defendant in a criminal action, provides that he is entitled ' to be confronted with the witnesses against him in the presence of the court ' " (p. 347). We said (VANN, J., at pp. 347-8): " We do not think the legislature intended to abolish the rule governing the admission of dying declarations, and such certainly has not been the understanding of the profession or the courts. We are not aware that this question has ever been raised before in this state, and yet the Criminal Code has been in force for nearly twenty years, and the Revised Statutes, which contain a similar provision, for nearly seventy years. (1 R. S. 94, § 14.) The right of the accused to be confronted with the witnesses against him has always been a part of the Bill of Rights, and yet dying declarations have been received in evidence for time out of mind. The legislature doubtless intended to confer upon a defendant in a criminal action the right to be confronted with any living witness against him. It is upon this ground that the objection to the introduction of such declarations in evidence against a defendant, based on his constitutional right to be confronted with the witnesses against him, has been uniformly overruled in those jurisdictions where such constitutional provisions are in force. It is invariably held that the deceased is not a witness within the meaning of such a provision or of the Bill of Rights, and that it is sufficient if the defendant is confronted with the witness who testifies to the declaration. (Citing cases)."

While appellants concede that there is a recognized exception to the hearsay rule, in that certain public records may be received in evidence, they contend that no part of the autopsy report may be received because it is not a public record in view of the

provision of New York City Charter, section 879, quoted (*supra*), that it " shall not be open to public inspection." In other words, it is argued that it is a condition precedent to admissibility that the record offered be available for inspection by the public, since that insures the accuracy and trustworthiness of the record. The only records not open to public inspection under the applicable statute here, are those delivered to the District Attorneys relating to deaths where there is indication of criminality. That is a proper exercise of the police power and in aid of law enforcement. The construction urged is too narrow. (See 5 Wigmore on Evidence, §§ 1630, 1632, 1634.) Suffice it to say, as to the autopsy findings, that they were contained in a report filed in a public office by a public officer for a public purpose embodying facts required by statute to be stated therein. That was sufficient, although in the public interest they were available only to public officials.

The judgment should be affirmed. (See 294 N. Y. 696.)

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, DESMOND and THACHER, JJ., concur.

Judgment affirmed.