In the Matter of TIMOTHY B. DULAY (ROOME), an Infant. EDWARD H. LOMBER, as Law Guardian, et al., Appellants; PATRICIA ROOME, Respondent.

Fourth Department, December 16, 1965.

*Raymond D. Gage* for appellants.

*Robert E. Muehe* for respondent.

*Per Curiam.* In this neglected child proceeding petitioner mother secured custody of her 5-year-old son from the Commissioner of Public Welfare of Ontario County, to whom custody had been transferred on May 2, 1961. The infant's law guardian and the foster parents have appealed from the Family Court order directing the transfer of custody to the mother.

The infant Timothy was born on October 29, 1960, the child of petitioner and one Roome with whom petitioner had been openly living in a meretricious relationship more than two years before the institution of these proceedings in Ontario County Children's Court in 1961. After transfer of custody to the Commissioner of Public Welfare petitioner was divorced by her husband and married Roome who is now her husband. The infant and a twin brother were premature babies and remained in the hospital until December 8, 1960 when petitioner took them home. The twin brother died shortly thereafter as a result of a head injury which he suffered when he fell from a couch. Three weeks after residing at home with petitioner the infant

Timothy was returned to the hospital because of loss of weight and serious illness. He was then released from the hospital and placed in foster home of purported appellants Brown by Ontario County Welfare Department. Two weeks later he was released to petitioner where he remained for another two weeks when his poor physical condition again required a return to the hospital. The Welfare Department refused to permit the return of the infant to petitioner's home and again placed him in foster care with the Browns. Two months later infant again was returned to petitioner where he remained for another two weeks. An inspection of the home conditions by the Welfare Department found the house without heat, the infant covered with sores and with a bruise upon his head as a result of being struck on his head by a bottle dropped by his mother. The infant was again taken from petitioner and placed in the same foster home. During some of this time the mother was away from the home in Cleveland on personal matters.

The Public Welfare Department of Ontario County then instituted proceedings in Children's Court. After hearing the matter the court declared the infant to be a neglected child and transferred custody of the infant to the Commissioner of Public Welfare of the County of Ontario who again placed the child in the foster home of the Browns where he remained for over four years until petitioner instituted these proceedings to terminate the neglected child proceedings and to regain custody of the infant.

The only proper appellant is the law guardian appointed by the court in this neglected child proceedings, pursuant to section 249 of the Family Court Act. The Commissioner of Public Welfare has taken no appeal. It is clear that the " appellants " Brown, who conducted the foster home and were compensated by Ontario County for the care and support given the infant, are not aggrieved persons in the legal sense and have no right to be considered as proper parties either in the Family Court proceedings or upon this appeal. The duly appointed law guardian, who contends that the Family Court order is not in the best interests of the infant, does have the right, and for that matter, the duty under the facts in this record to prosecute this appeal.

The record reveals an unhappy and sordid history of the conduct of the petitioner and the infant's father. It more than amply demonstrates the correctness of the original order transferring custody from petitioner to the Commissioner. Neglect on petitioner's part, habitual drunkenness and irresponsibility

of the natural father and now petitioner's husband, failure to have any substantial interest in the infant's welfare during the more than four years of foster care should have caused the Family Court to question seriously whether this infant now 5 years of age should have been returned to a mother whom he does not know and who has had physical custody of him for a total of only 48 days shortly after his birth.

Upon the hearing the Family Court Judge evidenced his concern about fitness of petitioner and her husband by requiring that they be examined by a psychiatrist. The examination which consumed about 30 minutes resulted in a phone call by the doctor to the Judge informing him of his findings. This was confirmed by a letter dated the same day as the court's decision in which the doctor in conclusory language not only found that petitioner and her husband had no mental illness but even went further and advised the court to decide the issue by giving custody to the mother. The law guardian was, of course, given no opportunity to examine the psychiatrist as to his findings but despite his objection the court received the doctor's letter in evidence. This method of accepting evidence with no opportunity to cross-examine was clearly improper (*Kesseler* v. *Kesseler,* 10 N Y 2d 445).

Although the court may have correctly refused to permit one Charlotte H. Wolfe, a duly qualified social worker who had been the investigator for the Ontario County Welfare Department on this case practically since the infant's birth, to express an opinion, from her knowledge of all the particulars of the case, as to the mother's fitness, he should not have shut off the questioning of this witness without having ascertained from her whether from her observations petitioner was conducting a suitable home for this infant. At the original neglect proceedings the court relied heavily upon this witness' testimony in transferring custody to the Commissioner. In a dispositional hearing in a neglect case all material and relevant evidence which would assist the court in its determination should be received (Family Ct. Act, §§ 345, 346).

These errors require a reversal and a new hearing at which the court should hear fully all persons who can assist him in arriving at a proper determination as to what is best for the welfare of this infant; an important part of which will be whether petitioner is a fit person and whether she and her husband can provide a suitable home for this infant. It is recommended that to assist the court a duly qualified person should be appointed and sent to Cleveland, Ohio, where the petitioner

and the infant now reside, to make a full and complete examination of petitioner's home, the condition of the infant who by then will have resided with petitioner for at least six months, the manner in which the other children living with petitioner are being cared for, to investigate the conduct and work habits of petitioner's husband, to consult with the Welfare Department of Cuyahoga County, church authorities and any other persons or organizations having any knowledge of petitioner and her husband and to examine such public records as will give any indication of the character and conduct of these parties. Such person should, upon his return from Cleveland, be required to testify at the new hearing and be subject to examination by all of the proper parties to these proceedings.

The physical custody of the infant should not be changed during the new hearing and he should remain with petitioner until the determination of the Family Court upon the new hearing.

WILLIAMS, P. J., BASTOW, GOLDMAN, DEL VECCHIO and MARSH, JJ., concur.

Order unanimously reversed and matter remitted to Ontario Family Court for new hearing in accordance with the opinion.