Margaret Taylor, J.
In petitions filed by their attendance teachers, respondents George C., Jose C., Joey M. and Luis L. were each alleged to be persons in need of supervision as a consequence of their alleged habitual truancy.
In hearings before this court, the only evidence offered to prove respondents’ truancy was the testimony of attendance teachers and transcripts prepared by the attendance teachers from school records purporting to document the attendance record of each respondent. Although available, none of the persons actually involved in recording the daily attendance of the respondents was produced by the Corporation Counsel. In each case, the attendance teachers did not have firsthand knowledge of the school attendance of respondents, the methods of recording attendance or the persons who were actually *876 involved in keeping the attendance roll books from which the offered transcripts were copied. The transcripts were not the original records in which the respondents’ attendance was recorded contemporaneously with an absence. They were, rather, records prepared by the attendance teachers by copying from the roll books maintained by respondents’ classroom teachers. The transcripts were prepared by the attendance teachers solely for use in court.
Respondents objected to the admissibility of the attendance transcripts on the grounds that they violated the rule against hearsay, respondents’ rights under the Family Court Act and the State and Federal Constitutions. Since common questions of law were presented, the cases were consolidated for the purpose of ruling on the motions to exclude the transcripts of attendance. For the reasons stated below, the court holds that to admit the transcripts of attendance without the testimony of the person or persons having direct knowledge of respondents’ school attendance would deprive respondents of due process of law and their right to confront and cross-examine the witnesses against them.
The purpose of article 7 of the Family Court Act "is to provide a due process of law (a) for considering a claim that a person is a juvenile delinquent or a person in need of supervision” (Family Ct Act, § 711). It is intended that juveniles be afforded the benefit of procedural and substantive constitutional safeguards applied to adults in criminal proceedings. (Committee Comments, Family Ct Act, § 711.) As the Supreme Court has stated: "It is these instruments of due process which enhance the possibility that truth will emerge from the confrontation of opposing versions and conflicting data. 'Procedure is to law what "scientific method” is to science.’ ” Matter of Gault, 387 US 1, 21.)
Thus, in accordance with section 711, it is the practice of the Family Court to afford the persons appearing before it the greatest measure of due process consonant with protecting the interests and safety of the community. The interests of the respondents and the community are best served by affording minors fundamentally fair procedures and the same substantive constitutional protections enjoyed by adults in the criminal courts.
Section 744 of the Family Court Act provides that "(a) [ojnly evidence that is competent, material and relevant may be admitted in a fact-finding hearing.” The requirement of com *877 petence guarantees young persons before the Family Court a protection fundamental to the concept of due process: that the only evidence, admissible against them must have indicia of reliability and trustworthiness, such as the live testimony under oath of witnesses who have firsthand knowledge of the facts of which they speak or documentary evidence either void of hearsay or fitting within the narrow exceptions to the rule against hearsay.
Thus, the provisions of article 7 of the Family Court Act must govern the issue of the admissibility of attendance transcripts.
But what of subdivision 2 of section 3211 of the Education Law (enacted in 1947) which provides: "A duly certified transcript of the record of attendance and absence of a child which has been kept, as provided in this section, shall be accepted as presumptive evidence of the attendance of such child in a proceeding brought under the provisions of part one of this article.” Clearly, this section of the Education Law permits hearsay prepared expressly for litigation to be admissible in evidence even though not within any exceptions to the rule against hearsay. Moreover, this section provides that documentary hearsay shall be presumptive evidence of whether or not respondents are persons in need of supervision. This statute paves the way for a trial by affidavit, as in the instant cases, where the sole evidence of "guilt” offered by the Corporation Counsel is the transcript. Trial by affidavit offends the most basic notions of due process. (California v Green, 399 US 149; Bruton v United States, 391 US 123; Matter of Erdman v Ingraham, 28 AD2d 5; Matter of Del Valle v Sugarman, 44 AD2d 523.)
Application of subdivision 2 of section 3211 of the Education Law to a PINS proceeding before this court would render the provisions of article 7 of the Family Court Act meaningless. It must be presumed that the Legislature intended the provisions of article 7 to supersede conflicting portions of the Education Law.
Article 7 proceedings are quasi-criminal in nature. (Matter of Gregory W., 19 NY2d 55; Matter of Michael E., 68 Misc 2d 487, see Matter of Winship, 397 US 358; Matter of Gault, 387 US 1, supra.) For the purposes of procedural and substantive constitutional protections, juvenile delinquency and PINS proceedings cannot be distinguished. Both involve a potential loss *878 of liberty[1] and the PINS respondent no less than the juvenile delinquent will be stigmatized by the label that may be attached by this court to their conduct.
The right to confront and cross-examine adverse witnesses is a fundamental attribute of procedural due process and has long been recognized as essential to a fair trial in this State. (See, e.g., Goldberg v Kelly, 397 US 254; Matter of Gault, supra, p 57; Matter of Friedel v Board of Regents, 296 NY 347; Matter of Dulay, 24 AD2d 208.) The right to confront and cross-examine assumes even greater significance in a criminal or quasi-criminal setting where such a fundamental right as the liberty of the child is at stake. (Matter of Gault, supra, p 57; see Matter of Gregory W., supra; Standards For Juvenile and Family Courts, Children’s Bureau Publication No. 437, pp 72-77 [1966]; Report of the President’s Commission on Law Enforcement and the Administration of Justice, Challenge of Crime in a Free Society, p 87 [1967]; Fed Rules of Evidence, Rule 803, subds [8], [6], Advisory Committee Notes [in US Code, tit 28, Appendix].)[2]
There is an obvious tension between the admission of hearsay evidence and the right to confront and cross-examine adverse witnesses. Out-of-court declarations are inadmissible because they lack the qualities of reliability and trustworthiness characteristic of in-court statements made by witnesses under the sanction of the oath where the trier of fact and *879 parties can observe demeanor, test motives and cross-examine the witnesses. (Donnelly v United States, 228 US 243.) Evidence is admitted under one of the exceptions to the rule against hearsay only if it has indicia of reliability and trustworthiness and typically, only if there is a necessity for the use of hearsay rather than live testimony under oath by a witness with firsthand knowledge. (Dutton v Evans, 400 US 74; People v Gower, 42 NY2d 117; see People v Nisonoff, 293 NY 597 [autopsy report of medical examiner who was unavailable to testify because he died before trial admissible].) The characteristic qualities of evidence admissible under one of the exceptions to the rule against hearsay — reliability, trustworthiness and the necessity for its use — are designed to achieve the closest possible substitute for cross-examination. (Dutton, supra.)
The attendance transcripts offered in evidence by the Corporation Counsel are hearsay and are inadmissible under article 7 of the Family Court Act and the New York State and United States Constitutions. These transcripts do not fall within the business record exception to the rule against hearsay (CPLR 4518, subd [a]).[3] The transcripts are not the original, daily records of attendance. Although the original records of attendance, the roll books, are made contemporaneously with the occurrence of absence, thus guaranteeing that the record is made while memory is still fresh, the transcripts are prepared at an indeterminate later date. There is no evidence of, and this court is not familiar with, the routine followed and the standards applied by school personnel in recording attendance (when is attendance taken, by whom, what constitutes an absence, what constitutes excusable absence, etc.). Thus, the systematic and routine characteristics of business records are not present here. (See People v Gower, supra; 5 Weinstein-Korn-Miller, NY Civ Prac, par 4518.02 [5].)
Nor is the court persuaded that there is any necessity for the use of the transcripts as a substitute for the live testimony of the persons who kept the roll books. These persons are *880 neither dead nor unavailable[4] and the petitioner has offered no compelling reason why the school personnel involved cannot appear.[5]
Of even greater significance is the fact that the transcripts offered in evidence were prepared expressly for litigation. The underlying rationale for the reliability of business records is that it is in the regular course of business to routinely and systematically keep records. There is some assurance of trustworthiness because the business needs accurate and reliable records to function properly. However, the transcripts in question were prepared solely for use in the courts. Consequently, they lack the objectivity, reliability and trustworthiness of business records. (Accord, Palmer v Hoffman, 318 US 109; People v Crant, 42 Misc 2d 350; see McCormick, Evidence [2d ed], § 308, p 724, n 49.)
Admission of the attendance transcripts without the testimony of the school personnel responsible for recording absences would violate respondents’ right of confrontation and the requirement of fundamental fairness inherent in the concept of due process. Petitioner seeks to have respondents adjudicated persons in need of supervision solely on the basis of a record prepared for litigation. Petitioners ask that respondents be subject to possible sanction solely on the basis of the hearsay evidence contained in the transcripts. The practice of petitioners and the Corporation Counsel of resting their entire case on the transcripts subjects respondents to trial by affidavit, a practice repugnant to the due process of law. (See California v Green, 399 US 149, supra; Bruton v United States, 391 US 123, supra.) Due process is no less offended by the notion that petitioners can carry the burden of "proof beyond a reasonable doubt” required in these proceedings by relying solely on the hearsay contained in the attendance transcripts. (Matter of Erdman v Ingraham, 28 AD2d 5, supra; Matter of Del Valle v Sugarman, 44 AD2d 523, supra.) Re *881 spondents cannot be adjudicated persons in need of supervision solely on the basis of the attendance transcripts and the testimony of petitioner attendance teachers, who have no personal knowledge of the facts contained in these transcripts or of the recording methods used or of the persons responsible for keeping the original record. Respondents are entitled to confront and cross-examine the witnesses against them.[6]
Therefore, for the reasons stated, respondents’ motion to exclude the attendance transcripts is granted in accordance with the provision of article 7 of the Family Court Act and section 6 of article I of the New York State Constitution.

. A PINS respondent may be treated in almost an identical manner to the juvenile delinquent respondent. He or she is subject to arrest and incarceration for failure to appear in court (Family Ct Act, § 720), and is subject to most of the array of dispositional penalties used against adjudicated delinquents, including involuntary placement away from home. (Family Ct Act, §§ 755, 756, 757.)

. Because of the potential conflict with an accused’s right of confrontation, the Federal Rules of Evidence accord different treatment to exceptions to the rule against hearsay in criminal cases. Rule 803 [8] excludes hearsay in the form of public records and reports when offered against a criminal defendant. The rule provides that governmental investigative reports are admissible only in civil cases and when offered against the Government in criminal cases. The purpose of these provisions is to avoid any collision with confrontation rights which would result from the admission of this type of written hearsay against the accused in a criminal case. (Fed Rules of Evidence Ann, Rule 803 [8] [C] comments, p 149 [1975].) The legislative history of this rule indicates the drafters’ awareness of the necessity for different treatment of the exceptions to the rule against hearsay when applied to criminal proceedings. (House Comm on Judiciary, HR Rep No. 93-650, 93d Congress 2d Sess, Feb. 6, 1974 [Holtzman and Dennis Amendments].) This view is shared by the authors of McCormick’s treatise on evidence, who suggest that the American judicial system, like the British, may soon employ two sets of hearsay rules, one for civil and one for criminal proceedings. (McCormick, Evidence [2d ed] § 327, p 756.)

. It has been held that the transcripts in question are admissible under the "public officer” exception to the rule against hearsay (CPLR 4520). Attendance teachers, however, are not public officers. They have no personal knowledge of the facts contained in the transcripts, and the transcripts do not become public records by way of being filed in a public office of the State. None of the formal indicia of reliability, trustworthiness and necessity found in the "public officer” exception are present in the case of attendance transcripts. (Cf. Matter of John R., 79 Misc 2d 339.)

. The unavailability requirement has greater significance in a criminal or quasi-criminal proceeding to which the right of confrontation attaches. (McCormick, Evidence, [2d ed], § 253, pp 608-610.)

. Although there are reportedly between 60,000 to 80,000 cases of truancy in New York City each year (see New York Times, June 17, 1977, p D14, col 1), the overwhelming majority of these truants are dealt with by means other than PINS proceedings. Since such a small number of these cases are ever brought to court, it cannot be said that requiring the testimony of teachers or other school personnel will cripple the educational system any more than requiring the in-court testimony of police officers cripples law enforcement.

. In Matter of John R., 79 Misc 2d 339, supra), the court took the position that affording respondents the right to confront and cross-examine the school personnel responsible for attendance-keeping would be pointless. I take a different view. A witness who maintains the original record would be able to enlighten the parties and the court with respect to such matters as: what constitutes an absence, an hour of tardiness, one-half day absence, or only a full day of nonattendance; what is a valid excuse; how are excusable absences recorded in the roll books. In addition, the witness could reveal whether there was any possible confusion as to the identity of the child before the court. Considering how few truancy cases ever become so aggravated as to be brought to court, it is not at all unlikely that the school personnel called as witnesses would remember major offenders of the attendance rules.