Titone, J.
(dissenting). When the office of the Chief Medical Examiner (OCME) investigates the circumstances surrounding a death by homicide, it is acting in the capacity of a law enforcement agency. Further, when such an investigation generates reports and other documentary material, those reports and material are, by statute, within the People’s direct and immediate control. The combination of these factors makes OCME reports and related documents Rosario material within the meaning of CPL 240.45. Since the majority holds otherwise, I dissent.
Initially, the majority’s rationale is flawed because it confuses the People’s control over the documents — a critical issue in Rosario analysis — with the People’s control over the documents’ contents and the entity that created the documents— considerations that are irrelevant in this context. The majority’s only explanation for its holding on the control issue is that "[t]he People have no power to dictate the contents or practices within OCME.” (Majority opn, at 193.) Yet, every case that the majority cites in connection with the question refers to the People’s "control” of the statements, not of the agency that generated or possessed them (see, People v Flynn, 79 NY2d 879, 882; People v Fishman, 72 NY2d 884, 886; People v Tissois, 72 NY2d 75, 78; People v Reedy, 70 NY2d 826, 827). Significantly, in People v Perez (65 NY2d 154, 158-159), this Court specifically rejected a mode of analysis based on the People’s relationship with the maker of the statement rather than the document embodying the statement itself.
Furthermore, control by the prosecutor over a statement’s contents or its maker or custodian rather than over the statement itself is a logically untenable criterion for determining the validity of a Rosario claim. The District Attorney has no more legal right or duty to dictate the practices of the police department than he has to dictate the practices of the Medical Examiner. While there may be a considerable degree of informal cooperation between the District Attorney and the police, the same assumption may also be made about the relations between the District Attorney and OCME. Furthermore, the District Attorney certainly does not have the power to "dictate the contents” of the many statements and docu *195 ments that are generated by the police and are routinely treated as Rosario material. Thus, the People’s right to "dictate the contents or practices within” the particular agency really provides no more basis for withholding Rosario status from OCME documents than it would for withholding that status from police documents (see, People v Perez, supra, at 158-159; see, e.g., People v Martinez, 71 NY2d 937; People v Novoa, 70 NY2d 490).
Contrary to the majority’s analysis, the "control” element, when correctly applied, points clearly and unambiguously toward treating OCME documents as Rosario material. Under the New York City Charter, OCME is required to "promptly deliver to the appropriate district attorney copies of all records relating to every death as to which there is, in the judgment of the medical examiner * * *, any indication of criminality” (ch 22, § 557 [g]). Further, the District Attorney or Police Commissioner may require OCME to deliver, in addition to the autopsy report, "such further records, and such daily information, as they may deem necessary” (Administrative Code of City of NY § 17-205; see also, County Law §§ 671, 673, 674 [3] [a]; § 677). Hence, unlike each of the "control” cases the majority cites (People v Flynn, supra; People v Tissois, supra; People v Fishman, supra; People v Reedy, supra; see also, People v Bailey, 73 NY2d 812), the District Attorney has direct and immediate control as a matter of right over the reports generated by OCME during the course of its investigation. Indeed, the District Attorney’s "control” of OCME reports is even more conclusive than is his "control” of documents possessed by police, since the latter are ordinarily made available to the People only by virtue of custom, practice and internal rules. Significantly, nothing in the majority’s writing explains what the element of "control” could possibly mean if a direct and absolute statutory right to delivery of the documents, without the need to resort to subpoena, is not sufficient.
Similarly flawed is the majority’s unexplained assumption that OCME, which has a significant statutorily delegated role in the investigation of crime, is not a "law enforcement agency” when it acts in pursuit of its duty to inquire into possible homicides. Whenever it receives notice of a death under suspicious circumstances, OCME must "fully investigate the essential facts,” record all aspects of its investigation and take possession of any potential evidence it finds at the scene (Administrative Code § 17-202). OCME is also required to *196 follow up with an autopsy and related inquiries "[i]f the medical examiner * * * has reason to suspect that a homicide has been committed” (Administrative Code § 17-203). Needless to say, the results of OCME’s homicide-related inquiries are often central to the People’s case once the matter goes to trial (see, e.g., People v Stewart, 40 NY2d 692). Additionally, OCME may play an important role even in nonhomicide cases by supplying the People with critical biochemical forensic analyses, such as serology testing and DNA profiling (see, e.g., People v McCain, 134 AD2d 287, 288; see also, People v Robles, 194 AD2d 750).
The fact that OCME has other functions unrelated to its role in investigating crime cannot be a valid reason to withhold the "law enforcement” label, since the same can be said about the police (see, People v De Bour, 40 NY2d 210, 218). Similarly, the fact that OCME is expected to conduct its investigations in an impartial manner is an unpersuasive ground for distinguishing that agency’s investigative function from that of the police, who also are expected to conduct their investigations with the sole goal of ferreting out the truth. Finally, the fact that "the duties of OCME are, by law, independent of and not subject to the control of the office of the prosecutor” (majority opn, at 192) is not a reasonable basis for ignoring that agency’s law enforcement responsibilities, since the police are also by law independent of the District Attorney.
In sum, where, as here, a local governmental agency operates cooperatively with the District Attorney’s office and performs investigative functions analogous to those performed by the police, it is difficult to justify a refusal to treat that agency as a member of the law enforcement team (Martinez v Wainwright, 621 F2d 184; see, People v Nisonoff, 293 NY 597, 604). While there are many other municipal agencies that incidentally assist the police or the District Attorney where appropriate, OCME is one of the few that has a statutorily imposed responsibility to investigate criminal homicides and that routinely assists the police and prosecutors in the investigation of other crimes. As such, OCME is as much a "law enforcement” agency as are the forensic units of the police department.
Finally, it makes little practical or logical sense to treat OCME autopsy reports and other relevant material as some *197 thing other than Rosario material. In the vast majority of homicide cases, the autopsy report will have automatically been forwarded to the District Attorney in compliance with section 557 (g) of the New York City Charter well before the commencement of trial. Where that statutorily mandated production has occurred, the District Attorney, having actual possession and control of the report, will then be required to turn it over to the defense under a routine application of CPL 240.45. It is only in that very small number of cases where there has been a failure to comply with section 557 (g) that the majority’s rule will apply and the autopsy report may be lawfully withheld from the defense. The operation of the majority’s rule will thus lead to arbitrary results that are rendered, if anything, even more senseless by the fact that the rule works to the defendant’s disadvantage only when the Medical Examiner has failed to perform a duty enjoined by law. There can be no justification for making the outcome turn on such a capricious determinant.
Typically in homicide prosecutions, a representative of OCME is called by the People to testify about the cause and physical circumstances surrounding the death. In many of these prosecutions, this testimony is critical to the resolution of a significant litigated issue such as causation or justification. In such situations, the ability of the accused’s counsel to conduct an informed cross-examination of the OCME witness may be crucial to the conduct of the defense. In my mind, it offends " 'a right sense of justice’ ” to deprive a defendant of the full benefit of timely disclosure in these cases solely because the Medical Examiner has failed to deliver the documents to the District Attorney in accordance with the law (see, People v Perez, 65 NY2d 154, 158, supra; People v Rosario, 9 NY2d 286, 289, cert denied 368 US 866). This arbitrary deprivation of an important right related to cross-examination can only impair the truth-seeking process. For that reason, I would hold that the OCME audiotape at issue in this case was Rosario material and that, accordingly, the courts below erred in summarily denying defendant CPL 440.10 relief.
Chief Judge Kaye and Judges Simons, Bellacosa, Levine and Ciparick concur with Judge Smith; Judge Titone dissents in a separate opinion.
Order affirmed.