[630 NYS2d 128]

SUSAN G. CRAMER, Respondent, v MARK W. KUHNS et al., Appellants.

Third Department, July 27, 1995

### APPEARANCES OF COUNSEL

*Ainsworth, Sullivàn, Tracy, Knauf, Warner & Ruslander,* Albany *(Mary Beth Hynes* of counsel), for Mark W. Kuhns, appellant.

*Thorn & Gershon,* Albany *(Arthur H. Thorn* of counsel), and *Lester, Schwab, Katz & Dwyer,* New York City *(Eric A. Portuguese* of counsel), for Harley Davidson Motor Company, Inc., appellant.

*Roemer & Featherstonhaugh, P. C.,* Albany *(Matthew J. Kelly* of counsel), for respondent.

### OPINION OF THE COURT

CREW III, J.

On May 24, 1987, plaintiff was a passenger on a 1982 Harley Davidson Roadster motorcycle operated by defendant Mark W. Kuhns. While making a sweeping left-hand turn at approximately 50 miles per hour, plaintiff and Kuhns heard a scraping sound at which time the motorcycle, instead of continuing the turn, went straight ahead into the guardrail. An investigation following the accident revealed a long scrape in the pavement beginning where the motorcycle went out of control and ending where it collided with the guardrail. As a consequence of the accident, plaintiff's foot was nearly severed at the ankle and her arm was nearly severed at the elbow, rendering her permanently disabled.

Plaintiff commenced this personal injury action seeking $2 million in damages. The complaint alleged that Kuhns negligently operated the motorcycle, that defendant Harley Davidson Motor Company, Inc. (hereinafter Harley) negligently designed, manufactured and sold the motorcycle, and that Harley was strictly liable for the defective design and manufacture of the motorcycle and for failing to warn of its defect. The alleged design defect was the motorcycle's side stand, which either dropped down or was left down by Kuhns and failed to retract upon impact with the pavement.

Following trial, a jury returned a verdict finding Kuhns

10% liable and Harley 90% liable and awarded plaintiff damages in the amount of $2,280,000. Kuhns and Harley appeal, *inter alia,* from the judgment entered thereon. Our review of the record leads us to conclude that there must be a reversal and a new trial.

■ There are a number of errors made by Supreme Court, any of which, arguably, necessitate a new trial. The most compelling argument made by Harley is its contention that Supreme Court erred in admitting into evidence a study undertaken by the National Highway Traffic Safety Administration (hereinafter NHTSA) in 1984 examining side stand retraction on 1975 to 1982 model motorcycles manufactured by five companies, one of which was Harley. The study contained, *inter alia,* the results of tests conducted by Dynamic Science, Inc. on the side stand apparatus of 14 models of motorcycles, including a 1981 Harley model, and the results of a mail survey conducted by NHTSA, wherein owners of models manufactured by the five companies studied responded to questions about their experiences with side stands contacting the ground. Finally, the study contained reports of accidents allegedly caused by side stand failures. This study, and a videotape of the test conducted on the Harley model, were received into evidence over Harley's objection and, as might be expected, became the focal point of plaintiff's case. After careful review of the record, we agree that the admission of the NHTSA study and the accompanying videotape was error and that the admission of such evidence was sufficiently prejudicial to warrant a new trial.

As a starting point, the study itself was hearsay and, as such, needed to fall within a recognized exception to the hearsay doctrine in order to be admissible. In this regard, we note that inasmuch as no one from the NHTSA testified at trial, the study could not have been admitted as a business record *(see,* CPLR 4518). As to whether the study could have been admitted under the public document exception *(see,* CPLR 4520), we note that the admissibility of a government investigative report under this provision has not been definitively addressed in this State *(see,* Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4520:3, at 245-247).

It has been suggested, however, that we might derive some guidance on this point from examining the judicial treatment accorded to the Federal counterpart to CPLR 4520, Federal Rules of Evidence, rule 803 (8) (C), which "provides for the

admission in evidence, in civil actions, of government agency reports which otherwise would be excludable as hearsay, if those reports constitute 'factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness' " *(City of New York v Pullman Inc.,* 662 F2d 910, 914, *cert denied sub nom. Rockwell Intl. Corp. v City of New York,* 454 US 1164, quoting Fed Rules Evid, rule 803 [8] [C]). The admission of a government report under this provision is committed to the trial court's sound discretion and will hinge upon "whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission" *(supra,* at 914). To that end, it has been suggested that factors to be weighed in determining the document's trustworthiness and reliability, among other things, might include (1) the timeliness of the investigation, (2) the skill and/or experience of the investigator, (3) whether the report was based upon testimony adduced at a hearing, and (4) the possibility of bias *(see,* Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4520:3, at 246).

Applying this analysis to the document before us, we are of the view that the NHTSA study does not fall within the scope of the public document exception contemplated by CPLR 4520. The study itself was preliminary in nature; no public findings were released and no recalls were issued. Additionally, the study was exceedingly brief in nature, and there was very little detail provided as to the actual tests conducted upon the various motorcycle models. Finally, the "observations" contained in the study were based, in part, upon the owner surveys and accident reports, neither of which were admissible,* and such observations were presented in a most conclusory fashion. Such deficiencies, coupled with the absence of testimony from anyone actually involved in the study, per-

---

* We note that the owner surveys are rank hearsay, and we are aware of no exception to the hearsay doctrine that would permit the results of such surveys to be received into evidence. Additionally, with respect to reports of prior accidents, such evidence would be admissible "only upon a showing that the relevant conditions of the subject accident and the previous one[s] were substantially the same" *(Hyde v County of Rennsselaer,* 51 NY2d 927, 929). No such showing has been made on this record and, in view of the limited information contained in the NHTSA study, it does not appear that such a showing could be made. Accordingly, the NHTSA's reliance upon such information in making its observations only serves to further undermine the study's level of trustworthiness and reliability.

suade us that the study and the accompanying videotape should not have been admitted into evidence.

As we are remitting this matter for a new trial, a few additional observations regarding the admissibility of the NHTSA study are warranted. Even assuming that plaintiff somehow was able to qualify the study as either a business record or a public document, the NHTSA study still could not be admitted into evidence in its entirety *(see,* note, *supra).* Additionally, although plaintiff contends that, at the very least, the test results and the videotape are relevant with respect to Harley's duty to warn, we are of the view that admission of such results would run afoul of two basic evidentiary maxims—namely, that the trial court only admit material and relevant evidence and that the probative value of such evidence not be outweighed by its prejudicial effect. In view of the sweeping and conclusory nature of the study, and in particular the lack of detail provided regarding the actual testing conditions, we are unable to conclude that the study has any relevancy to the matter now before us. Indeed, the study indicates that the tests were conducted upon concrete and jennite surfaces, not asphalt (upon which plaintiff's accident occurred), and acknowledges that asphalt and jennite simply are not the same type of surface. Although plaintiff argued at trial that this difference in surfaces goes to the weight and not the admissibility of the study, we disagree. Finally, even crediting plaintiff's argument on this point, we believe, for all the reasons previously discussed, that the study and the accompanying videotape are highly prejudicial and, on that basis alone, should not have been received into evidence. Plaintiff's remaining arguments on this point, including her assertion that Harley waived any objection to the admissibility of the NHTSA study, have been examined and found to be lacking in merit.

█ Next, Harley contends that Supreme Court erred in excluding from the trial a chart prepared by its expert, Kevin Breen, an engineering consultant. The chart contained a synopsis of Breen's survey of approximately 80 models of motorcycles illustrating that, of the models surveyed, only eight employed side stand safety features other than a warning. Because plaintiff's complaint included causes of action sounding in negligence, Breen's chart was admissible as evidence of custom and usage in the industry *(see, e.g., Lugo v LJN Toys,* 75 NY2d 850, 852) and Supreme Court erred in excluding it.

■■ We are also of the view that Supreme Court erred in excluding a notice of claim filed by plaintiff in a Court of Claims action arising out of the same incident. In that claim, plaintiff asserted that the accident was caused by the motorcycle being "thrown out of control when the kickstand struck a defective piece of roadway". We previously have held that a complaint filed in one lawsuit is admissible against the same party in another lawsuit as an informal judicial admission and that exclusion of such evidence constitutes reversible error (see, Carter v Kozareski, 39 AD2d 703, 704, appeal dismissed 31 NY2d 779). Supreme Court further erred in failing to charge that if the jury awarded damages to plaintiff, plaintiff would not be required to pay income taxes on the award and that the jury should not add or subtract from their award any amount on account of such taxes (see, Lanzano v City of New York, 71 NY2d 208).

Harley also contends that Supreme Court erred in permitting plaintiff to question John Herbrand, an engineer for Harley, about several prior motorcycle accidents without demonstrating that they were substantially similar to plaintiff's accident. While plaintiff is correct in asserting that the issue was not preserved for review, if we were to consider the matter we would hold the questions to have been improper for the reasons asserted by Harley.

■ We also find merit in Harley's contention that Supreme Court erred in allowing into evidence a videotaped test performed by plaintiff's expert, Dror Kopernik. On redirect examination of plaintiff's expert, Dennis Toaspern, plaintiff introduced into evidence a videotape showing Kopernik, who testified later in the trial, riding a Harley motorcycle with the side stand extended. The tape, made in preparation for a different trial, showed Kopernik leaning the motorcycle to the left so that the stand contacted the pavement; the stand repeatedly failed to retract. While the result of a test is admissible at trial to show the nature or tendency of an object, a prerequisite to its admission is that the test was conducted under conditions sufficiently similar to the ones at issue to make the results achieved relevant (see, Goldner v Kemper Ins. Co., 152 AD2d 936, 937, lv denied 75 NY2d 704). No such showing was made here and, indeed, the test portrayed in the video was not even conducted by the expert who was testifying.

■ Harley's assertion that the award of $50,000 for future medical expenses was excessive and speculative also is meritorious. While plaintiff's medical experts testified as to the

likelihood of future surgery, skin grafts and therapy, the only dollar amount testified to was $3,000 for two wrist procedures. Accordingly, the award of $50,000 for future medical care was based upon "uninformed speculation" *(Buggs v Veterans Butter & Egg Co.,* 120 AD2d 361). Were the matter not being retried, we would set aside the award and order a new trial on this issue unless plaintiff stipulated to reduce the award to $3,000 *(see, Skerencak v Fischman,* 214 AD2d 1020, 1021).

■ Finally, during the trial an accountant testified, over Harley's objection, that the value of plaintiff's inability to perform household services, past and future, totaled $680,485. Harley asserts that the loss of household services can be considered separately only in the context of a derivative action. Harley argues that such loss falls within the ambit of loss of enjoyment of life, which is a component of pain and suffering and is not amenable to quantitative analysis *(see, McDougald v Garber,* 73 NY2d 246, 257). We disagree. We have long considered an injured plaintiff's loss of household services to be a quantitative economic loss separate and apart from pain and suffering *(see, e.g., Compani v State of New York,* 183 AD2d 966).

■ Inasmuch as we are remitting this matter for a new trial, we deem it advisable to address one other issue raised by Harley. Harley contends that Supreme Court erred in refusing to strike evidence of Harley's postmanufacture side stand design change. As a general rule, evidence of postmanufacture design modifications is admissible in a products liability action only to prove a manufacturing defect *(see, Cover v Cohen,* 61 NY2d 261, 270). Inasmuch as Supreme Court dismissed plaintiff's manufacturing defect claim at the close of the evidence, Harley asserts that Supreme Court erred in denying its motion to strike the evidence of its design modification. Plaintiff, on the other hand, urges that the evidence is relevant to Harley's continuing duty to warn. Indeed, where a plaintiff is able to show that the manufacturer had knowledge of a defect prior to an accident, evidence of subsequent design changes is admissible *(see, Haran v Union Carbide Corp.,* 68 NY2d 710, 711-712). Absent the NHTSA study, there is, on this record, no such showing and evidence of the subsequent design change therefore would be impermissible. Harley's remaining contentions are either lacking in merit or have been rendered academic by our decision to remit this matter for a new trial.

MIKOLL, J. P., CASEY, YESAWICH JR. and SPAIN, JJ., concur.

Ordered that the judgment and orders are reversed, on the law, and the matter is remitted to the Supreme Court for a new trial, with costs to abide the event.