OPINION OF THE COURT
Donald N. Silverman, J.
Background
This action for breach of contract concerns the summary suspension of plaintiff, an anesthesiologist, by defendant hospital on March 29, 1989. The hospital had alleged departures from good and accepted medical practice in nine distinct patient cases. It was Dr. Bogdan’s position that there were no departures, other than some minor omissions or errors in charting, none of which would justify a summary suspension.
As called for in the hospital bylaws, a series of meetings and hearings ensued, culminating on April 9, 1991 when the suspension was upheld and continued by the hospital’s board of directors. This action was commenced on or about August 16, 1991. While the action was pending two State agencies were caused to investigate issues common to this case. First, in accordance with Public Health Law § 2803-e, the hospital *858 reported Dr. Bogdan’s suspension to the Office of Professional Medical Conduct (OPMC), who thereafter charged Dr. Bogdan with professional misconduct in six of the nine cases which were the subject of the suspension. Hearings were held before that body and a determination and order was issued on September 8, 1992. This document contains findings of fact, determinations as to departures from generally accepted standards of practice, conclusions as to whether there were instances of gross negligence, negligence, incompetence, or gross incompetence, and a determination of penalty.
Second, pursuant to Public Health Law § 2801-b, Dr. Bogdan filed a complaint with the Public Health Council (PHC) alleging that the hospital committed improper practices in causing her summary suspension. The Public Health Council, by letter dated May 15, 1992, issued its findings and decision. It found two distinct procedural flaws in the hospital’s proceedings and directed the hospital to review its action to suspend.
Issue
At issue in this trial are the admissibility of the OPMC determination and order, and the PHC findings. Also at issue is the admissibility of another OPMC determination and order which addresses allegations of misconduct by another physician, who in 1989 was the hospital’s Chief of Anesthesiology, and who played a significant role in Dr. Bogdan’s suspension.
Public Document Exception to the Hearsay Rule
CPLR 4520 provides that certificates or affidavits of public officers prepared in the course of their official duties is prima facie evidence of the facts contained therein. However, in this case the documents issued by public agencies are neither certificates nor affidavits, and in the case of the OPMC determinations and orders, contain opinions of witnesses who are not public officers. Under these circumstances, if the documents are admissible at all it would be under the broader common-law public document exception to the hearsay rule, not CPLR 4520; and if admitted, would not constitute prima facie evidence of the facts contained therein, but simply evidence which a jury could accept or reject (see, Consolidated Midland Corp. v Columbia Pharm. Corp., 42 AD2d 601 [2d Dept 1973]).
It has been held that the common-law rule does not violate the constitutional right to confront witnesses (.People v Nisonoff, 293 NY 597 [1944]). It does seem apparent, however, that conclusions reached in investigative reports can come *859 dangerously close to encroaching on the jury’s fact-finding role. The inability to put opinions or conclusions to the test through cross-examination can be highly prejudicial and the admissibility of such reports must be considered with great care. There are few cases which provide guidance, and oddly no cases involving medical malpractice and findings of the OPMC.
In Kowzlowski v City of Amsterdam (111 AD2d 476 [3d Dept 1985]), a case involving the suicide of an inmate, the trial court was found to have erred in excluding from evidence a report issued by the Medical Review Commission of the State Commission of Corrections. That report found rule violations in failing to maintain constant supervision of an inmate who expressed suicide ideation. It was held that admission of the report would not have preempted the jury’s role, since violation of an administrative rule is simply some evidence of negligence, which a jury is free to disregard.
An investigative report of the New York State Liquor Authority was found to have been improperly admitted in Stevens v Kirby (86 AD2d 391 [4th Dept 1982]). The report in the main consisted of hearsay statements provided in police reports (which were attached), and set forth conclusions based on those hearsay statements. It was found that the public document exception to the hearsay rule should not have been used to admit police reports that were otherwise inadmissible. (See also, Kelly v Diesel Constr. Div., 35 NY2d 1 [1974] [which excludes statements not otherwise admissible].)
Cases addressing the admissibility of autopsy reports distinguish between findings of fact and conclusions as to cause of death. A report’s factual findings are admissible and conclusions as to causes of death are not. (People v Violante, 144 AD2d 995 [4th Dept 1988]; People v Nisonoff, supra.)
In Cramer v Kuhns (213 AD2d 131 [3d Dept 1995]), a products liability case involving a defective motorcycle kickstand and the admissibility of a study by the National Highway Traffic Safety Administration, the Court looked to the Federal Rules of Evidence for guidance. Federal Rules of Evidence, rule 803 (8) (C) provides for the admissibility of reports of public agencies, but limited to "factual findings resulting from an investigation * * * unless the sources of information or other circumstances indicate lack of trustworthiness”. The Court in Cramer found the study to be conclusory in nature and lacking sufficient detail to establish its reliability or relevancy.
The First Department in Haggerty v Moran Towing & Transp. Corp. (162 AD2d 189, 191 [1st Dept 1990]) was caused *860 to apply Federal rules in dealing with a maritime case and the admissibility of an investigative report by the Coast Guard. It was found that "[flact findings, including reasonable inferences drawn from the evidence made by the Coast Guard following its investigation, are admissible in evidence. However, portions of the Coast Guard report herein, which state that no evidence was found of 'actionable misconduct, inattention to duty, negligence, or willful violation of law or regulation’, state legal conclusions, not factual findings, and as such are inadmissible under rule 803 (8) (C)”. This analysis of the Federal rule is chiefly supported by Beech Aircraft Corp. v Rainey (488 US 153 [1988]).
In Beech (supra) at issue was the admissibility of a Navy investigative report of a plane crash. It was held that unless there are circumstances which indicate a lack of trustworthiness, the report’s factual findings are admissible. The Court explicitly adopted a broad view of factual findings by including opinions, since it was observed that it is often difficult to distinguish between the two. It cited for example the "factual finding” that prior to crashing the plane lost power. This was based on various clues gathered at the crash site, which when put together actually support an "opinion” that the plane lost power. The Court found that it was not important to make these distinctions. More important was the focus on trustworthiness, which is an issue left to the sound discretion of the trial court.
There is a common thread which runs through most cases, State and Federal, as concerns this exception to the hearsay rule, and it appears to this court that the following rules emerge: (1) factual findings and inferences which reasonably flow therefrom are admissible; (2) opinions may be admissible, if sufficiently supported by the facts, and provided by a qualified declarant; (3) the report may not be used as a vehicle to admit into evidence information which would otherwise be inadmissible; (4) conclusions of law are not admissible; (5) the court must be satisfied that the factual findings are supported by evidence which is trustworthy, and result from an investigative process which is free of bias. In order to make this determination it is necessary that the report contain sufficient detail; (6) the trial court has broad discretion in determining issues of trustworthiness and relevance, and must exercise such discretion in deciding whether a report, or portions thereof, should be admitted.
*861 The OPMC and PHC Findings
The determination and order of the OPMC sets forth a summary of its proceedings, including dates of hearings, and a list of witnesses called by the Department of Health and by Dr. Bogdan. It then provides, case by case, findings of fact and generally the basis for the findings. The findings include relevant standards of care and determinations as to whether those standards were met. The findings are based on the testimony of expert witnesses, and carefully sets forth and discusses conflicts between the experts. The report thereafter, in a section entitled "Conclusions of Law”, provides definitions of negligence, gross negligence, incompetence, and gross incompetence. The court would note that the definition of negligence is as follows: "the failure to exercise the care that would be exercised by a reasonably prudent licensee under the circumstances”. This is followed by a discussion of the patient cases and determinations as to whether the doctor’s performance fell into any of these categories. The report concludes with a determination of penalty, if any.
In applying the criteria set forth above to the OPMC report the court observes that the report, which is 39 pages in length, describes in great detail how the proceedings were conducted and on what basis findings were made. The court is satisfied as to its trustworthiness and lack of bias. The findings of fact, including determinations as to departures, are clearly supported by the record as reflected in the report, and shall be admitted at trial. The conclusions of law and determination of penalty are clearly not admissible. The report shall be redacted accordingly.
With regard to the OPMC report concerning the Chief of Anesthesiology, this court has already ruled that the jury may hear of other instances of departures at the hospital in order to gain some understanding of how these issues are normally addressed. Since the jury will ultimately have to decide whether the hospital in causing this suspension acted in good faith and on objectively reasonable grounds, the court is of the opinion that this kind of evidence is highly relevant. Given its relevance, the OPMC report concerning the other physician shall be admitted as well, after making redactions in the same manner as indicated above.
The findings of the PHC are reflected in a letter addressed to Dr. Bogdan’s attorney and consist of two or three paragraphs setting forth its conclusions and determination. No hearings were held and no investigation conducted beyond consideration *862 of written submissions from each party. Given its brief and conclusory nature, these findings do not satisfy the criteria for admission under the public document hearsay exception. The other reasons for exclusion set forth by defendant need not therefore be addressed.