Laurie A. AKE, Individually and as Administratrix of the Estate of Kenneth C. Ake, Plaintiff,

v.

GENERAL MOTORS CORP., Defendant.

No. 94–CV–6447L.

United States District Court,
W.D. New York.

Oct. 21, 1996.

Mark S. Nunn, Joe R. McCray, Fitzsimmons, DesMarteau, Beale and Nunn, Rochester, NY, for plaintiff.

Robert Ellis, Brian D. Sieve, Kirkland & Ellis, Chicago, IL, Nancy N. Bogan, Walter R. Lancaster, John T. Hickey, Jr., Thorn & Gershon, Albany, NY, for defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

### INTRODUCTION

Plaintiff, Laurie A. Ake, individually and as administratrix of the estate of Kenneth C. Ake, commenced this products liability action against defendant General Motors Corporation ("GM"). Plaintiff sought to recover damages in connection with the death of Kenneth Ake on September 24, 1993. On that date, Kenneth Ake, while driving his 1983 Chevrolet C–20 pickup truck, accidentally struck a tree in an apple orchard in Ontario County, New York. The truck caught fire, and Kenneth Ake died in the fire.

The amended complaint alleges that the design of the truck was defective. Specifically, plaintiff alleges that the location of the fuel tank outside the vehicle's frame rails caused the tank to rupture when Kenneth Ake's truck hit the tree. The complaint alleges that this allowed fuel to escape, feeding the fire that killed Kenneth Ake. The amended complaint asserts causes of action for strict liability for defective design, strict liability for failure to warn, and a claim for punitive damages.

Numerous *in limine* motions were filed by the parties prior to the scheduled trial date. On two occasions, I advised the parties of my rulings on the motions so that they could prepare for trial consistent with those rulings. I had not, however, set forth, either orally or in writing, the basis for my rulings on the motions. This Decision and Order, then, briefly sets forth the basis for my rulings on the motions *in limine*.[1]

### I. *Plaintiff's Motions*

A. *Motions to Preclude Evidence of Defendant's Compliance with Federal Safety Standards and to Preclude Evidence of Industry Practice*

Plaintiff moved to exclude evidence that GM's C/K Series truck, which included the decedent's truck, complied with Federal Motor Vehicle Safety Standard 301, which deals with frontal barrier crash standards, including standards for fuel spillage caused by such a crash. Plaintiff also seeks to exclude evidence of industry practice relating to fuel system design at the time that decedent's truck was manufactured.

■ Both motions are denied. It is well established in New York that "compliance with a statute may constitute some evidence of due care ....," though it does not preclude a finding that the product was defective. *Lugo by Lopez v. LJN Toys, Inc.*, 146 A.D.2d 168, 171, 539 N.Y.S.2d 922 (1st Dep't 1989), *aff'd*, 75 N.Y.2d 850, 552 N.Y.S.2d 914, 552 N.E.2d 162 (1990); *Stone v. Sterling Drug, Inc.*, 111 A.D.2d 1017, 1019, 490 N.Y.S.2d 468 (3rd Dep't 1985). Compliance with a regulation can also be introduced as some evidence of due care. *Feiner v. Calvin Klein, Ltd.*, 157 A.D.2d 501, 549 N.Y.S.2d 692, 693 (1st Dep't 1990) (compliance with Federal fabric flammability regulations prescribed under the Federal Flammable Fabrics Act, 15 U.S.C. § 1191 *et seq.*, and Commercial Standard 191–53 is some evidence of due care in case based on negligence, breach of warranty, and strict products liability; *see also* New York Pattern Jury Instructions Supp. 2:141 at 309 (stating that in both negligence and strict liability design defect cases, jury should be charged that compliance with a

---

1. This Decision and Order does not address every motion in limine that was filed. Some of the motions were resolved by the parties themselves.

Others could not be resolved in the absence of either a hearing or further proffer.

federal safety standard constitutes some evidence of due care)).

Likewise, evidence that a manufacturer's design was consistent with prevailing practices in the industry has also been admitted as some evidence that the design was not defective. *See, e.g., Cramer v. Kuhns*, 213 A.D.2d 131, 137, 630 N.Y.S.2d 128 (3d Dep't) (trial court erred in excluding evidence that very few other manufacturer's motorcycles employed a certain safety feature that plaintiff alleged defendant should have incorporated into its design), *appeal dismissed*, 87 N.Y.2d 860, 639 N.Y.S.2d 312, 662 N.E.2d 793 (1995).

■ Although some of these cited cases involve negligence claims, these principles are nonetheless applicable to plaintiff's strict liability claims, since in a design defect case the two theories of liability are virtually identical.

> The reality is that the risk/utility balancing test [employed in strict liability cases] is a "negligence-inspired" approach, since it invites the parties to adduce proof about the manufacturer's choices and ultimately requires the fact finder to make "a judgment about [the manufacturer's] judgment" ... [A]s one commentator observed, "[i]n general, ... the strict liability concept of 'defective design' [is] functionally synonymous with the earlier negligence concept of unreasonable designing."

*Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258, 639 N.Y.S.2d 250, 662 N.E.2d 730 (1995) (quoting Schwartz, *New Products, Old Products, Evolving Law, Retroactive Law*, 58 N.Y.U. L.Rev. 796, 803).

B. *Motion to Preclude Evidence of the Overall Safety of C/K Series Trucks and Evidence of the Number of Accident–Free Miles Driven by such Trucks*

Plaintiff moved to preclude evidence that decedent's truck was safely designed "overall," and to preclude evidence of the number of C/K trucks on the road that have not had an accident like the one in which Kenneth Ake died.

■ This motion is granted in part and denied in part. Deciding whether a product is defectively designed requires weighing its dangers against its overall advantages. *Denny*, 639 N.Y.S.2d at 256, 662 N.E.2d at 734. Thus, the fuel system cannot be considered in isolation, but in the context of the overall design of the truck.

■ In addition, "the lack of evidence of prior accidents is admissible to negate negligence because continued use over a long period of time without incident may indicate that the condition has been proven to be adequate or safe." *Cassar v. Central Hudson Gas & Electric*, 134 A.D.2d 672, 674, 521 N.Y.S.2d 337 (3rd Dep't 1987). A lack of evidence of prior accidents is never conclusive proof that the defendant exercised due care, but it is a factor that the fact-finder could consider. *See Orlick v. Granit Hotel & Country Club*, 30 N.Y.2d 246, 250, 331 N.Y.S.2d 651, 282 N.E.2d 610 (1972). Therefore, a "large number of cases recognize that lack of other accidents may be admissible to show (1) absence of the defect or condition alleged, (2) the lack of a causal relationship between the injury and the defect or condition charged, (3) the nonexistence of an unduly dangerous situation, or (4) want of knowledge (or of grounds to realize) the danger." Edward W. Cleary, et al., *McCormick on Evidence*, § 200, p. 591 (3d ed. 1984) (citing cases).

Nevertheless, the defect alleged here is not that the design of the truck made it likely to crash, but that a fuel-fed fire was likely to occur in the event that it did crash. Therefore, evidence of its "overall" safety or the number of accidents in which these trucks were involved, is too tangential to the defect alleged here, and should be excluded under Rule 403 on the ground that it would be confusing to the jury, a waste of time, and of minimal relevance.

C. *Motion to Preclude Evidence that Decedent Was not Wearing a Seat Belt*

Plaintiff contends that Kenneth Ake's failure to wear a seat belt was not relevant to the issues in this case because it was not a causative factor in his death from the fire.

Plaintiff argues that the only issue here was whether the truck was defectively designed.

■ This motion is denied. Section 1411 of New York Civil Practice Law and Rules ("C.P.L.R.") expressly provides that damages in a wrongful death case are to be reduced "in the proportion which the culpable conduct attributable to the ... decedent bears to the culpable conduct which caused the damages." While decedent's failure to wear a seat belt may not have caused the fire, it may have caused some of his injuries in the accident. This evidence would therefore be relevant to plaintiff's claim for damages for decedent's conscious pain and suffering. Furthermore, evidence of a vehicle occupant's failure to wear a seat belt has been held admissible under § 1411 by several New York courts. *See, e.g., Curry v. Moser,* 89 A.D.2d 1, 454 N.Y.S.2d 311 (2d Dep't 1982); *Karczmit v. State,* 155 Misc.2d 486, 588 N.Y.S.2d 963 (Ct.Cl.1992); *Costanza v. City of New York,* 147 Misc.2d 94, 553 N.Y.S.2d 616 (Civ.Ct. City of N.Y.1990); *Fernandez v. Vukosa,* 108 Misc.2d 48, 436 N.Y.S.2d 919 (Civ.Ct. City of N.Y.1980).

In addition, defendant stated that its expert's reconstruction of the accident rested in part on his contention that an unbelted driver interacts differently with the steering wheel than a belted driver. Therefore, the evidence relates not just to damages, but to how the accident occurred.

### D. *Motion to Preclude Evidence of Decedent's Intoxication*

Plaintiff moved to exclude any evidence that plaintiff had been drinking or that he was intoxicated at the time of the accident. Defendant was prepared to offer evidence that on the date of the accident, Kenneth Ake left a bar where he had been drinking for some time, struck a parked car, and sped away from the scene. While being pursued by the driver of the other car, he went through a T-shaped intersection into the orchard where he crashed. There was also evidence that his blood alcohol level was over the legal limit.

■ This motion is denied. As stated, C.P.L.R. § 1411 allows the jury to consider the decedent's "culpable conduct" in apportioning fault. Driving while intoxicated could obviously be found to be culpable conduct in a case of this nature.

In response to this motion, plaintiff stated that she would concede that decedent caused the accident, and that this would suffice under C.P.L.R. § 1411. I disagree. Without knowing what led up to the accident, the jury would have had no basis for assessing decedent's culpable conduct and his alleged misuse of the product. For example, the jury's apportionment of fault might have been much different if the accident was caused by decedent's falling asleep at the wheel instead of by his driving while intoxicated. Without such evidence, the jury would be left to speculate about why the accident occurred; they might even wonder if some other defect in the vehicle, such as faulty brakes, caused the crash.

In addition, some of the facts of the accident, such as the speed of decedent's vehicle, and whether he applied his brakes before the crash, were disputed. Evidence of decedent's intoxication would be relevant to those issues as well. Evidence that decedent was intoxicated might make the jury more likely to believe that he was traveling at an excessive speed and that he did not use his brakes. *See Bramlette v. Hyundai Motor Co.,* No. 91 C 3635, 1992 WL 213956 *3 (N.D.Ill. Aug. 28, 1992) (since evidence in product liability case that driver who struck decedent's car was intoxicated might increase the likelihood that jurors would believe the manufacturer's contention that the fire that killed decedent resulted from a crash at exceptionally high speed, the evidence is relevant and admissible).

## II. *Defendant's Motions*

### A. *Motion to Preclude Reference to GM's Financial Condition or Profits*

Defendant moved to preclude any reference to GM's worth, profits, or other aspects of its financial condition, unless and until the jury determined that punitive damages were warranted. In response, plaintiff stated that she did not intend to offer evidence of GM's worth in her case-in-chief, but did intend to

offer certain financial evidence, including "profit figures" regarding the C/K trucks.

■ This motion is granted in part and denied in part. Plaintiff would be entitled to introduce evidence concerning the costs involved in utilizing various truck designs. In determining whether a product's design is defective, the jury must balance the risks inherent in the product as designed against its utility and cost, as well as the cost of using proposed alternative designs. *Voss v. Black & Decker,* 59 N.Y.2d 102, 108–09, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983).

Plaintiff, however, is precluded from offering evidence of defendant's *profits* during her case-in-chief. Although the *cost* of using a certain design should be considered in the context of the cost of manufacturing the entire product, GM's *profits* are much less relevant and much more prejudicial. In *La Plante v. American Honda Motor Co.,* 27 F.3d 731 (1st Cir.1994), the court held that the trial court erred in admitting evidence of defendant's profits from all-terrain vehicle sales, which was offered by the plaintiff to show that defendant's failure to warn was not the result of its ignorance of the product's dangers, but of greed. The First Circuit said that the "evidence was, at best, marginally relevant and of scant probative value," and that the risk of prejudice was "almost inescapable." *Id.* at 740.

The jury could have determined whether the vehicle was defective by focusing on the cost of the vehicle as designed and the cost of plaintiff's proposed alternative design. Defendant's profits would add little of probative value and could unduly prejudice defendant.

B. *Motion to Exclude Reference to Privileged Internal Investigation*

GM moved to preclude reference to an internal investigation conducted by William Webster, Esq., who at the time was an attorney in private practice. In 1993, GM retained Webster for the purpose of investigating, and providing legal advice about, GM's handling of certain litigation-related documents.

Plaintiff responded that she did not intend to introduce evidence of the Webster investigation during her case-in-chief, but that this evidence might become admissible in the punitive-damage phase of the trial under the "crime-fraud" exception to the attorney-client privilege, if the purpose of Webster's investigation related to GM's plans to destroy documents in the future.

■ This motion is granted. In *Seebeck v. General Motors Corp.,* No. 96–CV–449, 1996 WL 742914 (N.D.Ga. May 17, 1996), the court granted GM's motion for a protective order regarding documents relating to this same investigation. The court held that the documents were protected by both the attorney-client privilege and the work product privilege. The court also found that the list of the witnesses interviewed by Webster, and the names of those working for him, were protected by the work product privilege.

In reaching this conclusion, the Georgia court relied upon an affidavit submitted by Webster concerning the general nature of the investigation. I have reviewed the same affidavit and agree that these matters are privileged, for the reasons stated by the Georgia court.

In addition, the investigation related to statements made by Theodore Kashmerick, a former GM employee, at a deposition in an employment case. The Kashmerick deposition is the subject of another defense motion in limine in this case. I granted that motion (See Section II, G, *infra*) and excluded the Kashmerick deposition. Therefore, reference to the Webster investigation would have to be precluded as well.

■ Plaintiff's contention that the crime-fraud exception might apply has no support in the record. The party arguing that the crime/fraud exception applies has the burden of showing probable cause that a crime occurred and that the attorney-client communications were in furtherance of the crime. *In re John Doe, Inc.,* 13 F.3d 633, 637 (2d Cir.1994). Plaintiff has not met that burden.

C. *Motion to Preclude Plaintiff from Offering or Eliciting Testimony Regarding Legal Standards*

Defendant moved for an order precluding plaintiff from offering or eliciting witness testimony containing legal conclusions.

■ It is clear that expert testimony expressing a legal conclusion is not admissible, because such testimony would intrude on the trial court's function. *In re Air Disaster at Lockerbie Scotland on December 21, 1988*, 37 F.3d 804, 826–27 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 934, 130 L.Ed.2d 880 (1995); *United States v. Scop*, 846 F.2d 135, 139–142 (2d Cir.), *modified on other grounds in part*, 856 F.2d 5 (2d Cir. 1988).

■ In the absence of any indication that this is likely to be a problem at trial, however, this matter would be better dealt with through appropriate, timely objections rather than an order in limine.

I note, however, that plaintiff incorrectly asserts that an expert witness may give testimony encompassing a legal conclusion that is stated as the expert's own conclusion and that represents a small portion of the testimony providing the basis for his opinion. The Second Circuit in the *Lockerbie* case held that under such circumstances, admission of such testimony was error. 37 F.3d at 827.

D. *Motions to Bifurcate and to Preclude Evidence or Argument Regarding Plaintiff's Compensatory Damages Unless and Until Jury Determines that Such Damages Are Warranted*

Defendant moved to bifurcate the issues of liability and damages, and to preclude any evidence relating to compensatory damages until and unless the jury finds liability.

■ This motion is denied. Whether to bifurcate is generally left to the discretion of the trial judge. *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir.), *cert. denied*, 497 U.S. 1057, 111 S.Ct. 27, 111 L.Ed.2d 840 (1990). Courts generally consider "the various considerations of convenience, prejudice to the parties, expedition, and economy of resources." *Witherbee v. Honeywell*, 151 F.R.D. 27, 29 (N.D.N.Y. 1993). The moving party bears the burden of showing that bifurcation is warranted. *Bowers v. Navistar Int'l Transp. Corp.*, No. 88 CIV. 8857, 1993 WL 159965 *1 (S.D.N.Y. 1993).

■ Bifurcation here is not warranted. Some evidence, such as that relating to the fire, would be relevant to both liability (to show the cause of death) and damages for conscious pain and suffering. Even in the liability phase, the jury would know that decedent's truck caught fire, so there could be some sympathy in that regard even if bifurcation were granted. Any danger of prejudice could be minimized through appropriate jury instructions. *See, e.g., Aldous v. Honda Motor Co.*, No. 94–CV–1090, 1996 WL 312189 (N.D.N.Y. May 30, 1996) (denying bifurcation of liability and damages in personal injury case arising out of all-terrain-vehicle accident; evidence of nature of plaintiff's injuries was necessary to substantiate his account of how the accident occurred, and possible prejudice to defendant could be dealt with through cautionary instruction); *Monaghan v. SZS 33 Associates, L.P.*, 827 F.Supp. 233, 245–46 (S.D.N.Y.1993) (denying bifurcation of liability and damages in premises liability action by parents of shooting victim; though evidence of brutal nature of attack, and of victim's suffering, would elicit jury's sympathy, defendants failed to show that case was "truly extraordinary" so as to warrant Rule 42(b) relief); *Mason v. Moore*, —— A.D.2d ——, 641 N.Y.S.2d 195, 196–96 (3d Dep't 1996) (no abuse of discretion in bifurcating defendants' request for bifurcation in medical malpractice action); *Rezucha v. Garlock Mechanical Packing Co.*, 159 Misc.2d 855, 606 N.Y.S.2d 969 (Broome Co.1993) (denying defendants' motion for bifurcation in wrongful death action alleging products liability; noting that "the issue of juror sympathy is routinely and successfully handled by appropriate court instructions").

E. *Motion to Exclude Arndt Report*

Defendant moved to exclude a report entitled "Failure Modes of General Motors C/K Light Truck Outboard Frame, Side–Mounted Fuel Containment System." This report was prepared by Arndt & Associates, a consulting firm, and it concluded that the C/K fuel tank is susceptible to failure in a crash.

■ This motion is granted. The author of the report, Mark Arndt, is plaintiff's ex-

pert witness who is scheduled to testify at trial. Nevertheless, the report is hearsay.

The report is not a business record under Rule 803(6). It is not a record of events made at or near the time of the event, involving Arndt's regularly conducted business activity.

The fact that the report was *submitted* to the National Highway Traffic Safety Administration ("NHTSA") does not make it a public record under Rule 803(8), because it was not *prepared* by a government agency.

The report is not admissible as a prior consistent statement under Rule 801(d)(1)(B), because it was not offered to rebut a charge of recent fabrication or improper influence or motive. It is not admissible as an adoptive admission because it is not being offered against the party who adopted it.

Finally, the report is not admissible as a basis for Mark Arndt's expert opinion. The report *is* his opinion. Arndt may testify about some things in the report, but the report itself is inadmissible.

### F. *Motion to Exclude Evidence of GM's Post–Manufacture Conduct*

Defendant moved to exclude evidence of its conduct after decedent's vehicle was manufactured. This evidence allegedly relates to design changes, internal tests and studies performed by GM, and internal communications within GM.

■ This motion is granted in part and denied in part. The evidence would be admissible only on the failure-to-warn claim, if a proffer by plaintiff shows that it is sufficiently relevant to defendant's knowledge of alleged defect.

Plaintiff concedes that evidence of post-manufacture conduct is inadmissible on a negligence claim, but contends that it is relevant to the issue of defect on a strict liability claim.

In *Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 436 N.Y.S.2d 251, 417 N.E.2d 545 (1981), the court said that evidence of subsequent design changes could be admitted in a strict liability case, but *Caprara* involved an alleged *manufacturing* defect. The New York

Court of Appeals subsequently held that such evidence is inadmissible in a strict liability *design* defect case. *Haran v. Union Carbide Corp.*, 68 N.Y.2d 710, 506 N.Y.S.2d 311, 497 N.E.2d 678 (1986). The court in *Haran* said that postmanufacture, preaccident design changes are admissible only: in a design defect case to show feasibility (if defendant contests feasibility); or in a failure-to-warn case to show failure to warn of a known risk or defect.

Here, GM conceded the feasibility of alternative designs, so this evidence is inadmissible on the design defect claim.

The evidence is admissible only on the failure-to-warn claim, and clear cautionary instructions for the jury will be required. *See, e.g., Liriano v. Hobart Corp.*, No. 94 CIV 5279, 1996 WL 304337 *7 (S.D.N.Y. June 6, 1996) (evidence that defendant began putting warning on machine one year after machine that injured plaintiff was manufactured was relevant to demonstrate defendant's knowledge that the guard on its machine could be removed and that this presented a danger to consumers; evidence "was highly probative and was properly admitted").

■ However, plaintiff would first have to present evidence that defendant was on notice of a danger or defect; design modifications alone are not evidence that defendant knew that the original design was inadequate. *Haran*, 68 N.Y.2d at 712, 506 N.Y.S.2d 311, 497 N.E.2d 678 (evidence of modification to warning label not admissible on defendant's continuing duty to warn, since there was no evidence that defendant had been put on notice of danger or defect; "clearly, the modification itself cannot be received as an admission that defendant knew that the original warning label was inadequate"). The simple fact that a design was changed, without some evidence of the reason for the change, is not probative of whether defendant believed that the original design was defective.

■ I also note, however, that defendant's citation to *In re Joint Eastern and Southern District Asbestos Litigation*, 995 F.2d 343, 345 (2d Cir.1993), for the proposi-

tion that subsequent design changes are inadmissible "in all product liability actions" is inapposite, since that case applied Rule 407, which does not apply to *pre* accident conduct. *See In re Air Crash Disaster,* 86 F.3d 498, 531 (6th Cir.1996) (Rule 407 does not apply to postmanufacture, preaccident measures); *U.S. Fidelity & Guaranty v. Baker Material Handling Corp.,* 62 F.3d 24, 27 (1st Cir.1995) (same); *Cates v. Sears, Roebuck & Co.,* 928 F.2d 679, 686 (5th Cir.1991) (same); *City of Richmond, Virginia v. Madison Mgmt. Group,* 918 F.2d 438, 460 (4th Cir.1990); *Huffman v. Caterpillar Tractor Co.,* 908 F.2d 1470, 1481 (10th Cir.1990) (same).

■■■■ I am also unpersuaded by defendant's contention that the evidence should be excluded because plaintiff alleges that GM knew at the time of manufacture that the vehicle was defective. It is well established that a party may pursue alternative theories. *See AT & T Co. v. North American Indus. of New York,* 772 F.Supp. 777, 786–87 (S.D.N.Y. 1991), *amended in part on other grounds,* 783 F.Supp. 810 (S.D.N.Y.1992). Thus, plaintiff could allege that GM knew of the defect at the time of manufacture, or in the alternative, the GM learned of the defect after the vehicle was manufactured. Secondly, even if plaintiff alleged that GM knew of the defect at the time of manufacture, plaintiff could also attempt to show that subsequent events increased the level of GM's awareness, or that events showed the defect to pose a greater risk to drivers than GM had previously believed. Thus, the evidence is relevant to GM's continuing duty to warn of subsequently discovered defects.

### G. Motion to Exclude Deposition Testimony of Theodore Kashmerick

Defendant moved to exclude testimony that Theodore Kashmerick, now deceased, gave in another case, *Elwell v. General Motors Corp.,* which involved an employment dispute between one Ronald Elwell and GM. Kashmerick, who was a GM employee from 1953 to 1989, testified that around 1980 or 1981, unidentified persons in "the legal group" at GM told him not to keep so many documents around "because sometimes it's controversial," and that they came and "took every damn thing they thought was a problem." Allegedly some of the documents related to truck design, but Kashmerick did not identify specific documents or their contents.

■■■ This motion is granted. Kashmerick's testimony is inadmissible hearsay not within any exception.

The unavailable-witness exception of Rule 804 does not apply. That exception only applies if the party against whom testimony is offered "had an opportunity and similar motive" to examine the witness. The issues in this case are different from those in *Elwell.* Although Elwell alleged that GM had temporarily *concealed* certain information from him, *destroying* documents was not an issue in that case. Therefore, GM did not have a similar motive to cross-examine Kashmerick as they would in this case. *See General Motors Corp. v. Moseley,* 213 Ga.App. 875, 880, 447 S.E.2d 302 (Ct.App.Ga.1994) (reaching same conclusion based on state rule of evidence similar to Rule 804).

Plaintiff's argument that the testimony is admissible under Rule 804(b)(5) based on its "circumstantial guarantees of trustworthiness" is without merit. Kashmerick was vague on details, and he himself said that his "memory [wa]sn't too damn good any more."

### H. Motion to Exclude References to the Closed Investigation of the National Highway Traffic Safety Administration ("NHTSA")

Defendant moves to exclude evidence concerning an investigation of the C/K truck fuel system design by the NHTSA.

In 1992, a private consumers' group petitioned the NHTSA to investigate the C/K trucks' fuel system design. After an investigation, the NHTSA technical staff found no safety defect. Transportation Secretary Federico Peña then overruled the staff and issued a preliminary finding that a safety defect existed. Under the NHTSA's regulatory scheme, that finding remained tentative pending a public hearing on the matter.

GM then sued Peña, challenging his authority to issue his finding. Prior to the public hearing on the findings, Peña agreed

to settle the case with GM and close the investigation. As a result, a "final" decision was never issued.

■■■ The motion to exclude this evidence is granted in part and denied in part. Rule 803(8) provides a hearsay exception for "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies ..." concerning matters which the agency had a duty to report.

As to those portions of the report finding that the C/K fuel system was defective, would cause unnecessary deaths, etc., the findings were tentative and might have been revised or withdrawn after a hearing. For purposes of Rule 803(8), then, I do not believe that there ever was a true "finding" in that regard.

■■■ Regarding investigative reports, "[e]ven if the opinion seems to offer valuable information to the jury, it must be excluded if it is unreliable." 4 Weinstein's Evidence at 803–286 (citing *City of New York v. Pullman Inc.*, 662 F.2d 910, 914 (2d Cir.1981) (upholding exclusion of investigative report by federal agency in part because it was interim report subject to revision, and was not a final finding), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982)). In making that determination, the court may consider whether a hearing was held in connection with investigation. Weinstein at 803–287. *See also Cramer v. Kuhns*, 213 A.D.2d 131, 630 N.Y.S.2d 128, 131 (3d Dep't 1995) (results of NHTSA motorcycle study inadmissible under state's public-document exception, since study was "preliminary in nature").

Some matters contained in the report may be admitted if they are purely factual (such as test results), provided that a proper foundation is laid.

Although plaintiff stated that she sought only to introduce "findings," and not "conclusions," some things labeled "findings" in the report are clearly conclusions: for instance, the Engineering Analysis Report makes "findings" that there would be future deaths involving GM trucks that would not have

occurred if the drivers had been driving Ford trucks, and that GM knew when it designed the C/K trucks that the design increased the risk of post-crash fires. These are inadmissible.

Nor would plaintiff be allowed to refer to NHTSA's "investigation" of the C/K trucks. Plaintiff could elicit the fact that NHTSA had conducted certain *tests*, but the fact that an investigation occurred would be unduly prejudicial to GM, and would prove nothing.

### I. *Motion to Preclude Elwell from Testifying*

Defendant moved to preclude Ronald Elwell from testifying for plaintiff. Elwell is a former GM employee who was a member of GM's Engineering Analysis Group for eighteen years. This group assisted GM attorneys in the technical defense of product liability suits. Consequently, Elwell testified frequently on behalf of GM.

Elwell and GM terminated their relationship in 1989 after an employment dispute, and Elwell began testifying against GM in various cases.[2]

Elwell also sued GM in a Michigan state court for wrongful discharge. GM counterclaimed, alleging that by testifying against GM, Elwell was wrongfully disclosing privileged and confidential information. The parties eventually negotiated a settlement that, among other things, permanently enjoined Elwell from testifying in *any* product liability case involving GM.

On this motion in limine, GM sought to enforce the Michigan injunction in this action. Resolution of this matter turns on whether this Court will give full faith and credit to the Michigan injunction.

■■■ After considering the both parties' arguments on this issue, as well as the decisions of other courts that have ruled on this issue, I am persuaded by the reasoning contained in the numerous authorities submitted by the plaintiff, *e.g., Kibler v. General Motors Corp.*, C94–1494R (W.D.Wash. July 10,

**2.** Generally, Elwell's testimony concerns his research on fuel-fed engine fires and the existence

of the Ivey document discussed earlier.

1996); *Hannah v. General Motors Corp.*, 93–1368 (D.Ariz. May 30, 1996); *Bishop v. General Motors Corp.*, 94–286–S (E.D.Okla. June 29, 1994); *Williams v. General Motors Corp.*, 147 F.R.D. 270 (S.D.Ga.1993), and I find that the appropriate course is to not enforce the Michigan injunction and to permit Elwell to testify at trial.

 New York courts recognize that the Full Faith and Credit Clause requires a state to give full effect to the public acts, records, and judicial proceedings of other states. *Farmland Dairies v. Barber*, 65 N.Y.2d 51, 55, 489 N.Y.S.2d 713, 478 N.E.2d 1314 (1985). However, "the Full Faith and Credit Clause does not require a State to apply another State's law in violation of its own legitimate public policy." *Williams*, 147 F.R.D. at 272 (quoting *Nevada v. Hall*, 440 U.S. 410, 422, 99 S.Ct. 1182, 1189, 59 L.Ed.2d 416 (1979)).

New York has a "strong public policy favoring full disclosure." *Spectrum Sys. Int'l Corp. v. Chemical Bank*, 157 A.D.2d 444, 447, 558 N.Y.S.2d 486 (1st Dep't 1990), *aff'd as mod. on other grounds*, 78 N.Y.2d 371, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991). Because the Michigan injunction precludes Elwell from offering *any testimony at all*, it violates New York's public policy in favor of full disclosure. Therefore, the Full Faith and Credit Clause does not require this Court to enforce the Michigan injunction.

I note that I am familiar with the Eighth Circuit's decision enforcing the Michigan injunction in *Baker v. GMC*, 86 F.3d 811 (8th Cir.1996), and I decline to adopt its approach to this issue. Accordingly, Elwell would be permitted to testify to any relevant non-privileged matters.

### *CONCLUSION*

Plaintiff's motions to preclude evidence of defendant's compliance with federal safety standards and to preclude evidence of industry practice are denied. Plaintiff's motion to preclude evidence of the overall safety of the C/K series trucks and evidence of the number of accident-free miles driven by C/K series trucks is granted in part and denied in part. Plaintiff's motions to preclude evidence of decedent's intoxication and to pre-clude evidence of the fact that decedent was not wearing a seat belt are denied.

Defendant's motion to preclude references to defendant's financial condition or profits is granted in part and denied in part. Defendant's motion to preclude references to a privileged internal investigation is granted. Defendant's motion to preclude plaintiff from offering or eliciting testimony regarding legal standards is granted. Defendant's motions to bifurcate and to preclude evidence or argument regarding plaintiff's compensatory damages unless and until the jury determines that such damages are warranted are denied. Defendant's motion to exclude the report by Arndt & Associates is granted. Defendant's motion to preclude evidence of defendant's post-manufacture conduct is granted in part and denied in part. Defendant's motion to exclude the deposition testimony of Theodore Kashmerick is granted. Defendant's motion to preclude references to the closed investigation of the National Highway Traffic Safety Administration is granted in part and denied in part. Defendant's motion to preclude Ronald Elwell from testifying is denied.

IT IS SO ORDERED.