OPINION OF THE COURT
Herbert Kramer, J.
Has the defendant insurer satisfied its burden of proof that a policy exception applied to the damages sustained by plaintiff due to a blackout? This court holds that the defendant has met its burden of proof as to the damages sustained after the inception of the blackout, however as to any damages sustained prior to the blackout, summary judgment is denied.
Defendant The Hartford Steam Boiler Inspection & Insurance Co. moves for summary judgment. This action arises out of an “equipment breakdown” insurance policy issued by Hartford to plaintiff. On August 14, 2003, shortly before 4:00 p.m., a blackout occurred which affected the Midwest, northern United States and parts of Canada. The power outage lasted over 30 hours. On that same day, sometime prior to the power outage, between 12:00 noon and 2:00 pm., plaintiffs equipment was being repaired by an electrician due to some seemingly unrelated breakdown. The repair work was halted when the power outage affected plaintiffs premises.
Plaintiff allegedly sustained losses in the forms of property damage, spoilage and associated loss of business income. After *1130 an investigation, Hartford concluded that coverage existed for damage to plaintiffs refrigeration units, phone system, computer system, alarm system and video system caused by the initial power surge, which occurred immediately prior to the outage on August 14, 2003. Hartford denied the claims as to the spoilage and loss of income asserting that such losses were caused by a lack of power from plaintiffs utility provider and not from an equipment breakdown or an interruption of supply as required by the policy.
On a summary judgment motion the court must view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of every reasonable inference, and determine whether there are any triable issues of fact outstanding. (Branham v Loews Orpheum Cinemas, Inc., 8 NY3d 931 [2007].) The court must determine if the moving party’s papers justify holding as a matter of law that the “cause of action or defense has no merit.” (Marine Midland Bank v Dino & Artie’s Automatic Transmission Co., 168 AD2d 610 [1990].) It is well established that summary judgment is a drastic remedy that should not be granted where there is any doubt as to the existence of a material issue of fact or where the issue is arguable. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].)
Initially, a summary judgment movant has the burden to set forth evidentiary facts sufficient to entitle that party to judgment as a matter of law, tendering sufficient evidence to eliminate any material issue of fact from the case, and that showing must be made by producing evidentiary proof in admissible form. (Santanastasio v Doe, 301 AD2d 511 [2003].) Generally, a party does not carry its burden in moving for summary judgment by pointing to gaps in its opponent’s proof, but must affirmatively demonstrate the merit of its claim or defense. (Dalton v Educational Testing Serv., 294 AD2d 462 [2002].)
 Hartford’s arguments center on the findings of government and private reports, which establish that the outage was caused by Ohio’s system, that the plaintiff cannot prove that its losses were caused solely by an “accident” to covered equipment, as required by the policy and that Con Edison “tripped off line” as a result of an automatic relay protection system responding to grid disturbance, and therefore an exclusion in the policy applies to this particular situation.
In opposition, the plaintiffs arguments are fourfold. First, plaintiff contends that the motion is premature as examinations *1131 before trial have not been held.[1] Second, that the incident which caused plaintiffs damages was a covered event. Third, that provisions of the contract are ambiguous. Lastly, that a reasonable businessperson would anticipate a blackout would be a covered risk under an equipment breakdown policy.
Burden of Proof
The insurer must prove that an exclusion in the policy applies to defeat coverage. (Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98 NY2d 208 [2002]; Northville Indus. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 89 NY2d 621 [1997].) The burden on the insurer is a heavy one and is met by establishing “that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation and applies in the particular case.” (Belt Painting Corp. v TIG Ins. Co., 100 NY2d 377 [2003] [internal quotation marks omitted]; Pepsico, Inc. v Winterthur Intl. Am. Ins. Co., 13 AD3d 599 [2004].) Defendant has met its burden of proof that an exclusion applied only as to those damages sustained after the blackout by citing to the clear language of the policy and submission of the government reports establishing the cause of the blackout.
In opposition the plaintiff has failed to establish coverage for the damages sustained after the blackout under the policy. Rather, plaintiff has opposed the motion on the grounds stated above without offering any factual reasons why the policy should have covered the damages sustained due to the blackout.
Policy Interpretation
The determination of whether a provision in an insurance policy is ambiguous is a question of law for the courts. (Marshall v Tower Ins. Co. of N.Y., 44 AD3d 1014 [2d Dept 2007].) A contract is unambiguous if language it uses has definite and precise meaning, unattended by danger or misconception in purport of agreement itself, and concerning which there is no reasonable basis for difference of opinion. (Computer Assoc. Intl., Inc. v U.S. Balloon Mfg. Co., Inc., 10 AD3d 699 [2d Dept 2004].) If the words of the policy are unambiguous, establishing only one meaning when read in the context of the entire policy, then a court must enforce the plain and ordinary meaning of the words. (Morales v Allcity Ins. Co., 275 AD2d 736 [2000].) *1132 The court must enforce the plain meaning of the words and refrain from making or varying the contract of insurance to accomplish its notions of abstract justice or moral obligation. (Marshall v Tower Ins. Co. of N.Y., 44 AD3d 1014 [2007].)
When interpreting policy exclusions courts are directed to give exclusions a narrow construction and they will be enforced only if they are set forth clearly and without any ambiguity. (See Village Mall at Hillcrest Condominium v Merrimack Mut. Fire Ins. Co., 309 AD2d 857 [2d Dept 2003].)
Additionally, courts are required to construe insurance policies in accordance with the reasonable expectations and purpose of the ordinary businessman. (See Pepsico, Inc. v Winterthur Intl. Am. Ins. Co., 13 AD3d 599 [2d Dept 2004].) However, the insured has an obligation to read the insurance contract and is presumed to know its contents and assent to them and is bound by its terms. (See Sofio v Hughes, 162 AD2d 518 [2d Dept 1990]; Holcomb v TWR Express, Inc., 11 AD3d 513 [2004].)
The Policy Language
The policy sets forth two prerequisites for coverage. First there must be an “accident” to “covered equipment.” Second, any damage must be a “direct result of’ and “solely attributable to” an “accident” to “covered equipment.” Accident is defined in the policy as “a fortuitous event that causes direct physical damage to ‘covered equipment’.” The event must be one of the following: (1) mechanical breakdown, including rupture or bursting caused by centrifugal force; (2) artificially generated electrical current, including electrical arcing, that damages electrical devices, appliances or wires.[2]
The policy further outlines the coverages which may apply in the event of an “accident.” Business income, physical damage to perishable goods and losses and expenses that are results of an “interruption of service” are included in the coverages. In the definitions section of the policy “accident” is further limited by excluding the following: “(5) Misalignment, miscalibration, tripping offline” (emphasis added).
The Cause of the Blackout
Defendant has submitted the affidavit of Michael Forte, the Chief Engineer for Transmission Planning for Consolidated *1133 Edison, the Final Report of the U.S.-Canada Power System Outage Task Force, and the initial and follow-up reports by the New York State Department of Public Service. Together these submissions establish that the
“initiating conditions occurred in northern Ohio starting from normal operating conditions, then going into a period of abnormal but still potentially manageable conditions, and finally into an uncontrollable blackout in northern Ohio [that triggered] the cascade phase of the blackout as it spread in Ohio and then across the Northeast.”
It should be noted the admissibility of government investigative reports under CPLR 4520’s public documents exception has not been definitively addressed in this state (Donovan v West Indian Am. Day Carnival Assn., Inc., 6 Misc 3d 1016[A], 2005 NY Slip Op 50052[U] [2005], citing Cramer v Kuhns, 213 AD2d 131, 135 [1995]). New York courts may look to the federal counterpart in Federal Rules of Evidence rule 803 (8) (C) and the judicial treatment thereof. (Donovan, 6 Misc 3d 1016[A], 2005 NY Slip Op 50052[U], *10 [2005], citing Kaiser v Metropolitan Tr. Auth., 170 Misc 2d 321 [1996].) Under rule 803 (8) (C) “factual findings resulting from an investigation made pursuant to authority granted by law[ are admissible and will not be excluded as hearsay] unless the sources of information or other circumstances indicate lack of trustworthiness.”
“The admission of a government report ... is committed to the trial court’s sound discretion and will hinge upon whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission.” (Kaiser at 325.) In approaching the admissibility of such reports the following considerations are determinative:
“(1) factual findings and inferences which reasonably flow therefrom are admissible; (2) opinions may be admissible, if sufficiently supported by the facts, and provided by a qualified declarant; (3) the report may not be used as a vehicle to admit into evidence information which would otherwise be inadmissible; (4) conclusions of law are not admissible; (5) the court must be satisfied that the factual findings are supported by evidence which is trustworthy, and result from an investigative process which is free of bias. In order to make this determination it is necessary that the report contain sufficient detail; (6) the trial court has broad discretion in determining *1134 issues of trustworthiness and relevance, and must exercise such discretion in deciding whether a report, or portions thereof, should be admitted.” (See Bogdan v Peekskill Community Hosp., 168 Misc 2d 856, 860 [1996].)
Here the joint U.S.-Canada report and the New York State Department of Public Service reports were made pursuant to a directive from the former President of the United States George W. Bush and by directive of former Governor of New York George E. Pataki, respectively. The investigations appear to have been thoroughly conducted by skilled professionals and are immensely detailed. This court finds the reports satisfy the above considerations and are sufficiently reliable.
Forte states that the blackout of Con Edison’s service area was not attributable to any malfunction of Con Edison’s local distribution system. Rather the local distribution system shut down as a result of events that took place on the transmission system interconnecting a large geographic area. The New York report established that Con Edison’s equipment “tripped off line” as a result of the automatic relay protection systems responding to the grid disturbance. Tripping off line was an apparently appropriate protective measure triggered by the initial power surge.
Discussion
Hartford has submitted sufficient evidence to prove that the blackout was not a covered event under the instant policy. Plaintiffs assertion of ambiguity is not persuasive as the terms which are called into question either have no bearing to this particular incident, the meaning has been defined within the policy or they are simply unambiguous when read in the context of the policy. However, Hartford has limited its arguments almost exclusively to the events of the blackout and the time period of approximately 4:00 p.m. and later. Hartford argues that because the earlier loss was perhaps made worse by the blackout that it was not a “direct result of’ nor “solely attributable to” an accident as defined under the policy. This court finds that argument unpersuasive as the losses allegedly suffered by plaintiff can be compartmentalized into those suffered pre- and post-blackout and may be proved as a direct result of or solely attributable to the pre-blackout mechanical problems. It is undisputed that the equipment was not properly functioning earlier in the day, perhaps as early as noon.
*1135 Therefore, this court holds that any spoilage and resulting loss of income due to the blackout are not recoverable under the policy and summary judgment is granted as to those claims only. This court further holds that the damages which were sustained prior to the blackout may be recoverable under the policy and summary judgment is denied as to those claims.

. This argument is unpersuasive as the policy language can be interpreted by the court without the aid of testimony.

. Additional fortuitous events are enumerated but their inapplicability is not in dispute.